IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 2000 Session

**ROBERT McALISTER BARNETT, III v. PAULA LYNN BARNETT**

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Hamilton County**
**No. 63302    L. Marie Williams, Judge (by interchange)**

FOR PUBLICATION

**No. E1997-00010-SC-R11-CV - Filed September 5, 2000**

We granted this appeal to determine:  1) whether private school tuition constitutes an extraordinary educational expense under the Tennessee Child Support Guidelines; and 2) whether the noncustodial parent should be required to pay those expenses in addition to child support based upon the percentage of net income of the noncustodial parent.  We hold that pursuant to the Tennessee Child Support Guidelines private school tuition is an "extraordinary educational expense."  We affirm the decision of the Court of Appeals requiring the total amount of private school tuition to be paid by the obligor-father.  We hold, however, that in appropriate cases a court may apportion the amount of tuition between the parties.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed**

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

D. Mitchell Bryant, Cleveland, Tennessee, and Russell Theodore King, Chattanooga, Tennessee, for appellant, Robert McAlister Barnett, III.

Glenna M. Ramer and Sandra Jean Bott, Chattanooga, Tennessee, for appellee, Paula Lynn Barnett.

**OPINION**

BACKGROUND

Paula Lynn Barnett (Ms. Barnett) and Robert McAlister Barnett, III (Dr. Barnett) were divorced in 1986 after a fourteen-year marriage.  At the time of the divorce, the parties' son, Joshua, was three years old and their daughter, Katie, was an infant.  The final decree of divorce required Dr. Barnett to

pay $500 per week ($2,167 per month) in child support and $300 per week ($1,300 per month) in periodic alimony. In March, 1996, Ms. Barnett filed a petition to modify the child support award.[1]

The trial court found Dr. Barnett's gross income to be $209,206 and set child support in the amount of $3,700 per month. It ordered $700 of that amount to be paid into an educational trust for Katie, with the remaining $3,000 to be paid directly to Ms. Barnett. The trial court found that Joshua's tuition at McCallie, a private school, was an extraordinary educational expense. The court, however, ordered the tuition to be paid by Paula Barnett from the $3,000 monthly child support.

The Court of Appeals reversed the trial court's ruling. It held that extraordinary education expenses must be added to the percentage of net income required by the guidelines to be paid by the obligor[2] parent. The Court of Appeals remanded to the trial court for an award of additional child support to be paid by Dr. Barnett based upon Joshua's extraordinary educational expenses. For the reasons set forth below, we affirm the Court of Appeals.

ANALYSIS

We granted this appeal to decide the following issues:

Did the Court [of Appeals] err in finding private school tuition to be an extraordinary educational expense and in further requiring the father to pay those expenses in addition to guidelines child support?

As these issues raise questions of law only, our review is de novo with no presumption of correctness. See Nash v. Mulle, 846 S.W.2d 803, 804 (Tenn. 1993).

Child support in Tennessee is governed by Tenn. Code Ann. § 36-5-101. "In making its determination concerning the amount of support . . . the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection." Tenn. Code Ann. § 36-5-101(e)(1). Child support guidelines have been promulgated by the Tennessee Department of Human Services and adopted by the General Assembly. The purposes, premises, guidelines for compliance, and criteria for deviation from the guidelines carry what amounts to a legislative mandate. See Nash, 846 S.W.2d at 804.

The guidelines are based upon a flat percentage of the obligor's net income. The income of the obligee may not be considered in "the calculation of or as a reason for deviation from the guidelines in determining the support award amount." Tenn. Comp. R. & Regs. ch. 1240–2–4–.03(2). The flat

---

[1] Dr. Barnett filed a counterpetition for a reduction in child support and alimony and for an increase in visitation. We affirm the Court of Appeals' disposition of these issues.

[2] "[T]he parent with whom the child(ren) live primarily will be referred to as the obligee and the parent with whom the child(ren) do not primarily live will be referred to as the obligor." Tenn. Comp. R. & Regs. ch. 1240–2–4–.03(1).

percentage imposed "presumes that the obligee will be expending at least an equal percentage of net income as that of the obligor for the support of the children for whom support is sought." Id.

After computing the "percentage" amount of child support to be paid, a trial court must consider the criteria for deviation from guidelines set forth in Tenn. Comp. R. & Regs. ch. 1240–2–4–.04. Since the guidelines provide that the percentage amounts are minimums, the court "shall increase" the award calculated in Tenn. Comp. R. & Regs. ch. 1240–2–4–.03 for several specified reasons. At issue in this case is the provision requiring that "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage calculated in the above rule." Tenn. Comp. R. & Regs. ch. 1240–2–4–.04(1)(c).[3]

The guidelines appear to equate "extraordinary" with "additional" or "exceeding the usual." For example, the guidelines require the obligor to pay the cost of health care insurance for the children in addition to the computed percentage of child support. See Tenn. Comp. R. & Regs. ch. 1240–2–4–.04(1)(a). The guidelines then state that "extraordinary medical expenses not covered by insurance" must also be added to the percentage calculated. It does not appear that the guidelines contemplate a category of "ordinary" medical expense that is not covered by insurance.

The guidelines' use of the word "shall" leaves a trial court no discretion in adding extraordinary educational expenses to the obligor's computed percentage. See, e.g., Louisville & Nashville R. Co. v. Hammer, 236 S.W.2d 971, 973 (Tenn. 1951) (holding use of "shall" in statute requires mandatory compliance). We conclude that: 1) the guidelines contemplate private school tuition to be an "extraordinary educational expense" because the tuition exceeds or departs from the cost of public schooling; and that 2) the amount of the expense must be added to the obligor's percentage of child support computed under the guidelines.

Application of the guidelines to this case would therefore result in the full amount of private school tuition being added to Dr. Barnett's child support percentage. Moreover, Ms. Barnett suggests that Dr. Barnett agreed to Joshua's attendance at McCallie by signing a "preliminary application" for Joshua to attend McCallie when Joshua was in the fourth grade. At the time of the trial court's decision, however, it is clear from the record that Dr. Barnett did not approve of the enrollment and stated that he would not assist with the tuition. The trial court did not make an explicit finding that the parties had agreed to send Joshua to McCallie, nor does the record reveal such an agreement. Cf. Brooks v. Brooks, 992 S.W.2d 403, 408 (Tenn. 1999) (holding that the trial court had implicitly found that Mr. Brooks had agreed to assume responsibility for the private school expenses).

Although addition of the private school expenses is mandated, the guidelines do permit deviations. The guidelines provide that there is a "rebuttable presumption in all child support cases that

---

[3]Other reasons requiring an upward deviation include situations in which the parent paying support is not providing health insurance for the children; if the children are not staying overnight with the parent paying support for the average visitation period set forth in Tenn. Comp. R. & Regs. ch. 1240–2–4–.02(6); any other extraordinary expenses for the children "if the court finds that equity requires it." Tenn. Comp. R. & Regs. ch. 1240–2–4–.04(1) (a), (b) & (d).

the amount of child support determined by an application of these guidelines is the correct amount to be awarded unless . . . the application of the guidelines would be unjust or inappropriate in a particular case." Tenn. Comp. R. & Regs. ch. 1240–2–4–.01(2). Tennessee Code Ann. § 36-5-101(e)(1) also provides that the court awarding support may deviate from the guidelines "in order to provide for the best interest of the child(ren) or the equity between the parties."

In Jones v. Jones, 930 S.W.2d 541 (Tenn. 1996), this Court addressed instances in which downward deviation to achieve equity would be appropriate. We noted that the guidelines expressly state three instances in which downward deviation might be necessary to provide for equity between the parties:

> (1) where DHS has taken custody of the child(ren) pursuant to a neglect, dependency, or abuse action; (2) where the child(ren) spend more visitation time with the obligor than is assumed by the guidelines; and (3) in cases in which the obligor is subjected to an "extreme economic hardship," such as where other children living with the obligor have extraordinary needs.

Id. at 545. We found that this list, while not exhaustive, is a "powerful indication" of the types of situations where downward deviation is appropriate. Id.

In Jones, however, the trial court attempted to achieve equity by considering the father's misdeeds. We held that downward deviation to achieve equity could not be based upon the fact that the father "may not have been perfectly forthright concerning his finances and child care expenses, and [that] his spending habits [were not] a model of restraint." Id. We also emphasize that the issue in Jones involved the propriety of a downward deviation from the *base child support percentage*, and not from amounts mandatorily awarded for extraordinary expenses. See id. at 542, 545.

For purposes of determining the *base child support percentage* or a deviation therefrom, the guidelines state that the obligee's income should not be considered. See Tenn. Comp. R. & Regs. ch. 1240–2–4–.03(2). It is assumed under the guidelines that the obligee will be expending at least an equal *percentage of net income* for the support of the children as the obligor is expending. See Tenn. Comp. R. & Regs. ch. 1240–2–4–.03(2). The rationale for giving trial courts less discretion in deviating downwardly from baseline child support has little application to downward deviation from a mandatory imposition of extraordinary educational expenses. The equity to be done in cases involving extraordinary educational expenses is more closely linked to the guidelines' assumption that the child support award reflects the respective financial abilities of both parents. See Tenn. Comp. R. & Regs. ch. 1240–2–4–.03 (assuming that the custodial parent will be expending at least an equal percentage of net income as the obligor-parent).

This assumption does not apply and would necessarily fail if extraordinary expenses were to be tacked on arbitrarily under Tenn. Comp. R. & Regs. ch. 1240–2–4–.04(c). A parent who is paying increased support in the form of private school tuition is paying sums in addition to those of the

custodial parent. While the parent required to pay child support may be the person better able to bear the expense, this assumption will not be true in every case.

Some obligor parents may have substantially less income than the custodial parent. The wholesale imposition of private school tuition on the obligor in these cases could result in a tremendous disparity in the obligor's relative percentage of income contributed as child support – even to the extent of absorbing every penny of the obligor's income. Strict application of the guidelines in this context could impoverish one parent. We are bound to refrain from an interpretation of the guidelines that would lead to an absurd result. See Business Brokerage Ctr. v. Dixon, 874 S.W.2d 1, 5 (Tenn. 1994) (holding that "when the [statutory] language produces an absurd or incongruous result when applied in specific factual situations, the intent of the Legislature will prevail over the literal language of the statute").

We conclude that it is appropriate to consider the income of the custodial parent in considering whether a downward deviation[4] from the total child support award (percentage plus extraordinary educational expense) would achieve equity. Consideration of both parents' income recognizes the intent of the guidelines to ensure that, when parents live separately, the economic impact on the children is minimized and "to the extent that either parent enjoys a higher standard of living, the child(ren) share(s) in that higher standard." Tenn. Comp. R. & Regs. ch. 1240–2–4–.02(2)(e). Accordingly, if the equivalence or disparity in net incomes of the parties would make the allocation of all of the extraordinary expense to the obligor "unjust or inappropriate" in a particular case, the presumption of correctness of the amount of support required by the application of the guidelines may be rebutted.

We hold that wholesale imposition of private school tuition on a noncustodial parent may, in some instances, constitute just such an "unjust or inappropriate" application of the guidelines that would warrant downward deviation. Downward deviation in this context would spread the cost of tuition equitably among the parties. Our holding is consistent with our long-established common law rule requiring a parent to provide support "in a manner commensurate with his means and station in life." Nash, 846 S.W.2d at 805 (quoting Evans v. Evans, 125 Tenn. 113, 119, 140 S.W. 745, 747 (1911) (internal quotations omitted)).

Applying these principles to this case, we hold that it would not be "unjust or inappropriate" to require the entire amount of the private school tuition to be paid by Dr. Barnett. As stated above, Dr. Barnett's income was determined to be $209,000 per year. Ms. Barnett earns $28,000 per year and is dependent upon child support and alimony to meet the remainder of her needs and those of her children. The presumption that the percentage amount of child support plus extraordinary educational expense is the correct amount of child support has not been rebutted. We therefore affirm the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion. Costs of the appeal in this Court are assessed against Appellant, Robert McAlister Barnett.

---

[4] Any departure from the guidelines must be justified by specific, preferably written, findings by the trial court that strict application of the guidelines would be unjust or inappropriate. See Tenn. Code Ann. § 36-5-101(e)(1); Tenn. Comp. R. & Regs. ch. 1240–2–4–.02(7).

_____
JANICE M. HOLDER, JUSTICE