IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 28, 2001 Session

**SUSAN LOUISE WEISSFELD v. STEVEN CURTIS WEISSFELD**

**Direct Appeal from the Circuit Court for Knox County**
**No. 80536     Hon. Bill Swann, Circuit Judge**

**FILED MAY 29, 2001**

**No. E2000-02233-COA-R3-CV**

In this divorce action the Trial Court divided marital property, set child support, and granted wife limited rehabilitative alimony.  Wife appealed.  We affirm, as modified.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

John D. Lockridge, Jr., and Scarlett A. Beaty, Knoxville, Tennessee, for Appellant, Susan Louise Weissfeld.

Jerrold L. Becker, Samuel W. Brown, and Annie Scott Duncan, Knoxville, Tennessee, for Appellee, Steven Curtis Weissfeld.

**OPINION**

In this divorce action, the wife appeals from the Trial Court's division of the parties' marital assets, the amount of child support, and the award of rehabilitative alimony.

These grounds are raised on appeal:

1.     Whether the trial court erred in its valuation of the husband's medical practice?

2.     Whether the trial court erred in failing to consider husband's noncompliance with the pendente lite Order and husband's dissipation of assets?

3.     Whether the trial court erred in failing to award wife additional rehabilitative alimony and alimony in solido?

4.     Whether the trial court erred in setting child support?

5.     Whether the trial court erred in refusing to allow the testimony of wife's divorce planner?

6.     Whether the trial court erred in failing to grant wife's request for a continuance?

The parties were married in 1980 and two children were born to the marriage. For the past several years the husband's income as a physician has ranged from a high of $416,000.00 to a low in 1998 of $216,000.00. With respect to the property division, the wife takes strong issue with the Trial Court's evaluation of the husband's medical practice.

The standard of review is *de novo* with a presumption of correctness of the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). *McCarty v. McCarty,* 863 S.W.2d 716 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

It is well-settled that valuation of an asset is a question of fact that is to be determined by considering all of the evidence presented. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998). As the primary judge of witness credibility, the Trial Court believed the husband's accountant, Jeffrey Novinger, a CPA's evaluation of his medical practice. The Court had designated Leroy Bible to evaluate the practice, but Bible did not testify. However, his report calculating the value of the practice was admitted into evidence. Novinger testified that Bible improperly valued the tangible assets, and that Novinger used the cost, less depreciation value of the assets. Novinger valued the business at $53,000.00, whereas Bible valued it at $260,000.00.

Novinger had extensive knowledge of the parties' personal and business assets, and clearly explained his calculations. He testified that the accounts receivable number used by Bible was not as recent as the number that he used, and further explained that the collection rate was not as high as it had been in prior years, and gave plausible reasons. He further explained that the

business value had to be reduced by the debt owed to the businesses by the parties, which was not refuted. There was nothing to indicate that his data or his evaluation lacked trustworthiness, and his use of the term a "ballpark figure" regarding the hard assets is not a basis to second-guess the Trial Judge on the issue of the witness's credibility.

The evidence does not preponderate against the value placed upon the practice by the Trial Judge. *See Koch v. Koch*, 874 S.W.2d 571 (Tenn. App. 1993); *Brock v. Brock*, 941 S.W.2d 896 (Tenn. Ct. App. 1996).

The wife argues that the Trial Court also erred in failing to consider the husband's non-compliance with the Court's previous pendente lite Order, and the husband's dissipation of assets. Our review of the evidence shows that the Trial Court was correct in finding that the testimony on these issues was extremely confusing as to exactly what the parties did and/or intended to do regarding the Court's previous Order. The Trial Court also determined that the Order was ambiguous as to which debts were to be paid, and whether they were to be paid in full, or simply have payments made. Rather than focusing on each party's alleged failure to comply with a previous Order, the Court instead focused on making an equitable property division with the debts and assets as existed at the time of trial. We find the Court's approach appropriate in this case.

The Trial Court has broad discretion in the division of marital property, and its decision is given great weight on appeal. *Mondelli v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989).

In this case, the parties were married for nineteen years, and both contributed to the marital estate. The parties are very close in age, and neither party brought any significant property into the marriage, nor does either party have any significant separate property now. Husband has a far greater earning capacity than the wife, although wife is employable and has some skills.

The Trial Court awarded wife vehicles worth some $40,000.00, plus an investment account valued at $18,400. The husband was awarded vehicles worth $16,000.00. All of the remaining assets of the parties were split 50/50, including the value of the medical practice. The Trial Court imposed all of the joint indebtedness upon the husband, and we find the evidence does not preponderate against the Trial Court's distribution.

The only alimony which wife was awarded by the Trial Court was in the form of rehabilitative alimony. The husband was ordered to pay wife's tuition for an MBA program, with restrictions. The wife argues this alimony is insufficient, and she should be given a greater award of rehabilitative alimony as well as alimony *in solido.*

Tennessee Code Annotated Section 36-5-101(d)(1) makes clear that there is a preference for rehabilitative alimony. However, the Court may grant alimony *in futuro* where rehabilitation is not feasible.

In this case the Trial Court found the parties were both in good health, and both parties had earning capacity, but found the husband's earning capacity was far greater than the wife's. The Court made no finding regarding the needs of the parties, except to note that the needs do not equal desires. The Court found that both parties contributed to the earning capacity of the other and to the marital estate. He found that the parties had enjoyed a lavish standard of living which was often beyond their means, and that fault favored neither side. The Court further found the wife did not need to be trained to be employed, as she had been trained as a nurse, but that she was a part of the marriage while the husband was completing his residency and such, and further noted that he admired the wife's desire for further training. We do not disagree with the Trial Court's finding that rehabilitative alimony was appropriate in this case. *See Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000). However, we disagree with the Trial Court's award. The wife, whether working as a nurse[1] or in some other capacity upon obtaining an MBA degree, in all probability, cannot increase her earning capacity to the level of the husband's.

The wife argues that the award of rehabilitative alimony is inadequate. She points out that the husband, in the past, has shown an earning capacity of $18,000.00 to $20,000.00 per month, and she argues that to satisfy her needs and obtain a graduate degree, she should have $3,000.00 per month for a five-year period as rehabilitative alimony, as well as further alimony *in solido*. We believe an award of $2,000.00 per month for four years as rehabilitative alimony is appropriate in this case, and should enable the wife to care for her children and obtain an advanced degree to enhance her earning potential. Upon remand, we direct the Trial Court to enter an Order modifying the rehabilitative alimony award in accordance with this Opinion.

Next, the wife argues that the Trial Court improperly set the husband's child support based upon the Trial Court's finding that husband's net income at that time was $11,743.00 per month. The husband testified that this was his average monthly net income for the first ten months of 1999. The Guidelines (Tenn. Comp. R. and Regs. Ch. 1240-2-4-04(1)(e)) expressly state, however, that the Trial Court is to calculate the amount of support due by averaging the obligor's income for the past two years.

In 1998, husband's gross income was $239,498.00. In 1999, husband earned $153,174.00 in the first ten months. Thus, husband's gross monthly income for 1998 was $19,958.16 and the husband's gross monthly income for 1999 was $15,317.40. An average gross monthly income for these two years would be $17,637.78.

In this case, the Trial Court should have determined husband's gross monthly income to be $17,637.78. The proper calculation to reach husband's net income for purposes of the Guidelines is as follows:

---

[1]It is doubtful the wife will be able to find immediate employment as a nurse, in view of the fact she has not worked as a nurse for the past fourteen years.

| | |
|---|---|
| Gross monthly income | $17,637.78 |
| Subtract: FICA tax[2] | <1,349.29> |
| Withholding[3] | <5,242.80> |
| Net income per Guidelines | $11,045.69 |
| Child Support ($11,045.69 x 32%) | $3,534.62 |

Thus, the proper amount of Guideline child support based upon the gross income of husband as averaged over the two years preceding trial would be $3,534.62. The wife however, asks this Court to consider, the fact that the parties' daughter attends a private school, and the tuition the wife must pay in order for her to continue. The wife argues that the parties decided jointly to have daughter attend a private school due to her problems in school, and husband did not refute this testimony.

In the case of *Barnett v. Barnett*, 27 S.W.3d 904 (Tenn. 2000), the Court explained that after computing the percentage amount due under the Guidelines, the Court should also consider whether a deviation from that amount is justified, and that since the percentage amounts are minimums, an increase for certain specified reasons may be in order, one of which is "extraordinary educational expenses". The Court concluded that the Guidelines contemplate private school tuition to be an "extraordinary educational expense" and that such tuition may be added to the percentage computed under the Guidelines, so long as it will not bring about an unjust or inappropriate result in a particular case. Under the rationale in *Barnett*, it is not unjust or inappropriate to require husband to pay the private school tuition because his income is so much greater than the wife's. *Id.* Accordingly, the husband will be ordered to pay the daughter's private school tuition in addition to

---

[2]As a salaried employee, husband's FICA tax, which includes the Medicare tax, is figured at 7.65% of gross income. Tenn. Comp. R. and Regs. Ch. 1240-2-4-.03(4).

[3]This portion of the calculation is as follows:

| | |
|---|---|
| Monthly Gross | $17,637.28 |
| Subtract: one withholding allowance | <229.17> |
| Amount upon which withholding tax is based | $17,408.11 |
| Withholding tax on $17,408.11 per tax schedule | $5,242.80 |

*See* 1999 Circular E, Employer's Tax Guide, Publication 15 by the Internal Revenue Service, pages 32 and 24. *See also* Tenn. Comp. R. and Regs. Ch. 1240-2-4-03(4).

the child support herein above calculated.

Finally, the wife argues that the Court erred in excluding Wahner, the wife expert witness, who is a divorce planner. The Trial Court specifically found that the witness's testimony would not assist the Court in understanding the evidence, or in determining a fact issue as required by Tennessee Rules of Evidence 702. The admissibility, relevance and competency of expert witnesses are matters largely within the discretion of the Trial Court, and the Court's ruling will not be overturned unless its discretion was abused. *See Rumsey v. County of Humphreys*, 2000 WL 157473 at *6 (Tenn. 2000). There is nothing in the record to suggest that the Trial Court abused its discretion. The witness testified regarding tax consequences in this case which the Trial Court felt were within his experience and knowledge and with which he was familiar. We find that the Court's ruling was not in error.

Finally, the wife argues that the Trial Court's denial of her request for a continuance was in error because discovery had not been completed. The record demonstrates, however, that this case had been pending for well over a year, and there was adequate time for discovery to be completed. The husband counters that the wife, to prevail, was required to show an abuse of discretion by the Trial Court, and further that the outcome would have been different if the continuance had been granted. The record does not support the wife's contention that the case should have been continued. *See Morrow v. Drumwright*, 304 S.W.2d 313 (Tenn. 1957); *Tipton v. Smith*, 593 S.W.2d 298 (Tenn. Ct. App. 1979).

For the foregoing reasons, we affirm the judgment of the Trial Court, as modified in this Opinion and remand, with the cost of the appeal assessed one-half to Steven Curtis Weissfeld, and one-half to Susan Louise Weissfeld.

_____
HERSCHEL PICKENS FRANKS, J.