IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 21, 2004 Session

## GARY L. TURNAGE v. JUDITH WASHKA TURNAGE

**Direct Appeal from the Circuit Court for Shelby County**
**No. 161629 R.D.     Robert L. Childers, Judge**

**No. W2003-02790-COA-R3-CV - Filed November 15, 2004**

This is a child support case involving the allocation of private school tuition.  The trial court ordered the father to pay one-half of the minor children's private school tuition.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

S. Denise McCrary and Stephanie M. Micheel, Memphis, Tennessee, for the appellant, Gary L. Turnage.

Barbara McCullough, Memphis, Tennessee, for the appellee, Judith Washka Turnage.

**OPINION**

*Statement of the Facts and Procedural History*

On April 19, 2000, Gary L. Turnage ("Father") and Judith Washka Turnage ("Mother") were divorced in Shelby County pursuant to a final decree of divorce that incorporated a marital dissolution agreement ("MDA").  The MDA provided that the parties were entitled to joint custody, but that Mother would be the primary residential parent of the parties' three minor children, Elizabeth, Rachel, and Hannah (collectively the "children"), who at the time of the divorce were ages fourteen (14), nine (9), and six (6), respectively.  Additionally, the parties agreed that Mother would be the ultimate decision maker should the parties disagree on issues relative to the children.

Pursuant to the MDA, Father agreed to pay Mother child support in the amount $1,576.00 per month, an amount "based upon a stipulated earning capacity of $65, 480.76."  During the

marriage, each of the children attended St. Benedict's School, a private Catholic school where Mother worked as a teacher. As an employee of St. Benedict's, Mother received a discount in tuition for the children. As part of the MDA, the parties agreed to the following provision regarding the children's private school tuition:

> The parties acknowledge that it is their desire and in the best interest of the children for the children to continue to attend private school at St. Benedict's School. However, both [parties] acknowledge the financial constraints currently existing. Therefore, the parties agree that each of them shall pay one-half of the tuition, books, and fees incurred by the children for the school year of 2000-2001, after the application of all applicable discounts, grants, and scholarships.
>
> The issue of whether further private schooling will occur after the year of 2000-2001 is hereby reserved for review by the parties in February 2001.

In the Spring of 2001, Father advised Mother that he was no longer able to contribute to the children's tuition beyond the 2000-01 school year. At Mother's request, Father informed the children that they would no longer be attending St. Benedict's. In August 2001, however, Mother re-enrolled the children in St. Benedict's. On September 25, 2001, Mother filed her Petition to Modify Final Decree of Divorce to Modify Visitation And/Or Custody And For Payment of Private School ("Mother's Petition"). Although it is not clear from the record how Mother financed the payment of tuition, Mother continued to send the children to St. Benedict's for the 2001-02 and 2002-03 school years. On January 9, 2003, by consent order, the trial court appointed Lisa Zacharias ("Ms. Zacharias") as guardian ad litem to represent the interest of the children. Mother's Petition ultimately came to be heard on September 5, 2003.

At the hearing on Mother's Petition, the trial court heard proof from Mother, Father, and Ms. Zacharias.[1] The evidence demonstrated that Mother earned $29,622.00 in gross income in 2002 from her employment at St. Benedict's and additional part-time employment. Mother also testified that she received an earned income tax credit, allowing her to avoid income tax on her earnings. In addition to her monthly wages, Mother received $1,576.00 in child support payments, resulting in roughly $4,000.00 per month in income.

The proof showed that, during the years of 2000, 2001, and 2002, Father earned $54,036, $55,963, and $59,065 each year, respectively. Father testified that, just prior to the hearing, he had been transferred to a new position, but he anticipated earning $65,000.00 in 2003. In his affidavit of income and expenses, Father listed a gross monthly income of $4,922.16. At the

---

[1] The appendix to Mother's responsive brief in this appeal contains a guardian ad litem report prepared by Ms. Zacharias. This report was not made a part of the record on appeal. Rule 28 of the Tennessee Rules of Appellate Procedure only allows a brief's optional appendix to contain parts of the record. Tenn. R. App. P. 28 (2004). Therefore, by order of this Court, Ms. Zacharias's guardian ad litem report was stricken from the record. Ms. Zacharias's testimony regarding the children's development in school and relationships with their parents, however, remains a part of the record.

hearing, however, Father testified that he received between $150 to $200 per month of rental income from real property he inherited from his father. Father's affidavit listed a net monthly income of $3,014.49.[2] Father's affidavit, however, did not list the rental income of $150 to $200 per month. Father's affidavit set forth itemized expenses totaling $4,065.00, resulting in a monthly deficit of $1,050.51. The trial court, however, took exception with several of the listed expenses, including expenses for a cell phone; personal entertainment; Christmas and birthday gifts; and an additional life insurance policy. The court also noted Father's failure to account for any income tax refund, failure to include rental income, and inclusion of a deduction for Mississippi state income tax. In issuing its ruling from the bench, the court stated the following:

> Mr. Turnage's statements that he can't afford to send his daughters to St. Benedict's School any longer sort of rings hollow. It appears to the Court that he chooses not to afford it. He chooses to spend his money in other ways other than for his daughters' private school education.
>
> In the Court's view, he is able to afford it. If he wants to get other things, then that's fine. If he wants to buy other things, then let him go out and get another job or two or three jobs, like Mrs. Turnage has chosen to do.

After hearing the evidence, the trial court entered an order granting Mother's petition which contained, in relevant part, the following language:

> **1**. That the Plaintiff, **Gary L. Turnage**, is to continue to pay the sum of $1,576.00 per month, as child support. . . .
>
> **2.** That the Plaintiff, **Gary L. Turnage**, is to continue to pay one-half (½) of the private school tuition for the parties' minor children.
>
> **2.**[sic] That the Plaintiff, **Gary L. Turnage**, is to pay the sum of $6,000.00 for his share of the private school tuition for the minor children for the school years of 2001/2002, and 2002/2003, at the rate of $500.00 per month, effective October 1, 2003, for a period of twelve (12) months, until the total sum of $6,000.00 has been paid to [Mother].
>
> **3.** That the Plaintiff, **Gary L. Turnage**, is to pay the sum of $4,000.00 for his share of the private school tuition for the minor children for the school year of 2003/2004, at the rate of $400.00 per month, effective October 1, 2003, for a

---

[2]Father's net monthly income was reached after deducting FICA, Medicare, insurance premiums, Mississippi state income tax withholding, and federal income tax withholding. Since Father was transferred before the hearing to a position in Tennessee, the deduction for Mississippi state income tax will no longer occur. Thus, his monthly net income will increase by $224.08.

period of ten (10) months, until the sum total of $4,000.00 has been paid to [Mother].

Father has appealed from the trial court's order and presents the following issue for our review: Whether the trial court erred in ordering Father to pay one-half of his minor children's private school tuition.

### Standard of Review

In cases tried without a jury, Rule 13(d) of the Tennessee Rules of Appellate Procedure requires this Court to review the trial court's findings of fact *de novo* accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d) (2004). This Court has previously set forth the applicable standard to apply in cases where the trial court deviates from the child support guidelines:[3]

> When a trial court exercises its discretion to deviate from the Child Support Guidelines, we review its decision according to the "abuse of discretion" standard of review. *Tallent v. Kates*, 45 S.W.3d 556, 560 ((Tenn. Ct. App. 2000); *State ex. rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). A discretionary decision will be set aside only when the trial court misconstrued or misapplied the controlling legal principles or acted contrary to the substantial weight of the evidence. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). Therefore, an appellate court will review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.* at 223; *see also Kaatrude*, 21 S.W.3d at 248.

*Berryhill v. Rhodes*, No.W2001-00748-COA-R3-JV, 2002 WL 927442, at *6 (Tenn. Ct. App. May 2, 2002)(*no perm. app. filed*).

### Law and Analysis

On appeal, Father makes three arguments regarding the issue raised. First, Father argues that before ordering an obligor[4] spouse to pay one-half of the private school tuition, the trial court must make a threshold finding that private school tuition is an "extraordinary educational expense" followed by a determination of whether the obligor spouse is able to afford the tuition.

---

[3] Pursuant to section 36-5-101(e)(2) of the Tennessee Code, the child support guidelines were promulgated by the Tennessee Department of Human Services. Tenn. Code Ann. § 36-5-101(e)(1) (2003 Supp.). The guidelines can be found at Tennessee Compiled Rules and Regulations 1240-2-4-.01 to -.04 (2004).

[4] "[T]he parent with whom the child(ren) live primarily will be referred to as the obligee and the parent with whom the child(ren) do not primarily live will be referred to as the obligor." Tenn. Comp. R. & Regs. 1240-2-4-.03(1).

Under section 36-5-101 of the Tennessee Code, there is a rebuttable presumption that the amount of child support determined by the child support guidelines is the proper amount. Tenn. Code Ann. § 36-5-101(e)(1). The guidelines set child support according to a flat percentage of the obligor's net income, "depending on the number of children for whom support is being set." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(2) (2004). The court may deviate from the child support award set under the guidelines if certain criteria are met. *Id.* ch. 1240-2-4-.04. Under the guidelines, the base percentage amount of child support is deemed a minimum, and pursuant to rule 1240-2-4-.04 of the guidelines, "[e]xtraordinary educational expenses . . . *shall* be added to the percentage calculated [under the child support guidelines]." Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(1)(c) (emphasis added).

In 2000, the Tennessee Supreme Court expressly held that private school tuition is an "extraordinary educational expense," and the tuition amount "must be added to the obligor's percentage of child support computed under the guidelines. *Barnett v. Barnett*, 27 S.W.3d 904, 907 (Tenn. 2000). As the supreme court explained, "[t]he guidelines' use of the word 'shall' leaves the trial court no discretion in adding extraordinary educational expenses to the obligor's computed percentage." *Id.* In general, the guidelines require that the full amount of the private school tuition be added to the obligor's base percentage amount because the tuition is an extraordinary educational expense, over and above the base child support amount. *Id.* The court in *Barnett*, however, tempered its holding by recognizing that "[s]trict application of the guidelines . . . could impoverish one parent." *Id.* at 908. As the court reasoned, "if extraordinary expenses were . . . tacked on arbitrarily," this indiscriminate imposition of private school tuition "could result in a tremendous disparity in the obligor's relative percentage of income contributed as child support—even to the extent of absorbing every penny of the obligor's income." *Id.* at 908. Thus, in those cases, "it is appropriate to consider the income of the custodial parent in considering whether a downward deviation from the total child support award (percentage plus extraordinary educational expense) would achieve equity," by equitably apportioning the tuition cost between the parties. *Id.* at 909.

In light of the holding in *Barnett*, the mandate of the child support guidelines is clear—private school tuition is an "extraordinary educational expense" that must be added to the obligor's base child support amount. In appropriate cases, the court may consider a downward deviation from the total child support award, in order to "spread the cost of tuition equitably among the parties." *Barnett*, 27 S.W.3d at 909. In the case at bar, Father earned approximately $65,000.00 from working one job, and Mother earned just under $30,000.00 from working multiple jobs. The facts in this case come close to supporting the guidelines' mandate that Father pay the full amount of the tuition. Mother, however, did not seek to have Father pay the full amount. Thus, we cannot find that the trial court abused its discretion in ordering Father to pay one-half the children's private school tuition.

Alternatively, Father argues that "private school tuition is in the nature of child support,"and an order to pay private school tuition is warranted "only when there is significant

variance between the [child support guidelines] and the support currently ordered."[5]  The *Barnett* decision is supported by our holding in *Huntley v. Huntley*, 61 S.W.3d 329, 339 (Tenn. Ct. App. 2001), where this Court specifically held that private school tuition payments are separate from base child support.  *Id*.; *see also Dwight v. Dwight*, 936 S.W.3d 945, 950 (Tenn. Ct. App. 1996) (holding that tuition expenses do not constitute child support under the guidelines and must not be incorporated into the percentage of obligor's income paid as support).  Thus, an obligee spouse  is not required to prove a significant variance before obtaining an order that the obligor spouse pay amounts for extraordinary educational expenses.

Finally, Father asserts that the order requiring Father to pay one-half the children's tuition was unjust and inappropriate in view of the fact that, after payment of child support and tuition costs, he is left with $1,532.99 net income per month for living expenses, while Mother has $3,644.50 net income per month.  Father argues that if he is required to continue to pay for one-half of the private school tuition, his net monthly income would be reduced to roughly $1,000.00 per month.  We note, however, that Father's tuition payments will be reduced from $900 to $400, after he has paid off the amount he owes for back tuition from the 2001-02 and 2002-03 school years.  Additionally, as each of the children graduate, the total tuition cost will be reduced accordingly.  Further, Father's argument seems to undervalue the fact that, as primary residential parent, Mother is bearing the primary expense of raising the three minor children.

In *Earthman v. McRae*, No. W2002-00564-COA-R3-CV, 2003 WL 1860527, at *2–3 (Tenn. Ct. App. Apr. 1, 2003)(*no perm. app. filed*), this Court affirmed the trial court's order requiring the obligor to pay $500.00 per month towards her daughter's private school tuition, even when the obligor was left with only $1033.61 net income per month, or thirty-four percent (34%) of her income.  *Id*. at *4.  In *Earthman*, the obligee was asking that the obligor pay the entire amount of the tuition, and this Court was faced only with the issue of apportioning the tuition cost based on the respective incomes of the parties.  *Id*. at *3.  As previously stated, in this case, Mother only sought an order requiring Father to pay one-half of the children's tuition.

### *Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court.  Costs are taxed to the appellant, Gary L. Turnage, and his surety.

_____
DAVID R. FARMER, JUDGE

---

[5]Section 36-5-101(a)(1) of the Tennessee Code provides that, in child support cases, the court will grant a modification of the support award only "when there is found to be a significant variance, as defined in the child support guidelines . . ., between the guidelines and the amount of support currently ordered. . . ."  Tenn. Code Ann. § 36-5-101(a)(1).  Under the guidelines, if the support order is $100 or greater, a "significant variance" will be found where there is at lease a fifteen percent (15%) difference between the guideline amount and the current support order.  Tenn. Comp. R. & Regs. 1240-2-4-.02(3).