IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 6, 2004

## STATE OF TENNESSEE EX REL. DEBRA MARDIS v. DAVID MARDIS

**Appeal from the Juvenile Court for Davidson County**
**No.'s 2019-56299 & 2019-56300      Betty Adams Green, Judge**

---

**No. M2002-01026-COA-R3-CV - Filed June 20, 2005**

---

The Juvenile Court reduced the monthly amount of child support the father was obligated to pay from $345 to $130. The State of Tennessee, acting under Title IV-D of the Social Security Act, appealed the trial court's determination. The State argues that the court should have either maintained the father's support obligation at the presumptive level of $345 or deviated downward from the guidelines in accordance with the method enunciated by this court in the case of *Casteel v. Casteel*. Although the trial court impermissibly used the mother's income as a factor in calculating support, father was entitled to a downward deviation, and the amount awarded was within guiding legal principles. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of right; Judgment of the Juvenile Court**
**Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Paul G. Summers, Attorney General and Reporter; Stuart F. Wilson-Patton, Senior Counsel, for the appellant, State of Tennessee, ex. rel. Debra Mardis.

### OPINION

David and Debra Mardis married and became the parents of two children, Christina (d.o.b. 10/27/83) and Sean (d.o.b. 11/14/85). At some point, the parents separated and the mother assumed primary custody of the children, while the father exercised regular visitation. The mother subsequently applied for and received financial assistance from the State for the benefit of her children.

Tenn. Code Ann. § 71-3-124 provides that when an individual receives support under Title IV-D, the State may file any legal action to "establish, modify or enforce child or spousal support" and that it becomes the assignee of any right of support which that individual is entitled to receive from another person. Accordingly, on June 26, 2000, the State of Tennessee filed a sworn Petition

in the Juvenile Court of Davidson County to establish the father's child support obligation by applying the Tennessee Child Support Guidelines.[1]

A hearing was conducted before the Juvenile Court Referee, who ordered the father to pay $520 per month in weekly installments for the two children.[2]  A subsequent hearing resulted in a finding that Mr. Mardis owed $1,300 in retroactive child support, and he was ordered to pay the obligation off through additional payments amounting to $43.33 per month.

On February 12, 2002, Mr. Mardis filed a pro se motion in the Juvenile Court for a reduction in his child support obligation.  He noted that his daughter Christina had turned eighteen on October 27, 2001, and had moved out of the mother's home the previous July.  He accordingly asked the court to terminate his support obligation for her.  He also asked for a review of his support obligation for his son Sean.  In view of Christina's reaching her majority, the Juvenile Court Referee reduced the father's child support obligation to $345 per month, which is the presumptively correct amount for the support of one child under the guidelines for an obligor with the father's gross income of $2,000 per month who has standard visitation and where there are no other circumstances justifying a deviation.

On March 19, 2002, the referee conducted another hearing to determine the father's support obligation for his son.  The mother and father both appeared and testified during that hearing.  A "Parenting Plan," which was signed by both parents and notarized on the date of the hearing, was discussed at the hearing.[3]  The document set out a weekly visitation schedule for the parties, which provided that sixteen-year-old Sean would stay with his mother four days a week and with his father

---

[1] The record indicates that the parties were divorced sometime before March 19, 2002, the date of the final hearing before the Juvenile Court Referee. The final decree of divorce is not included in the record, so we have no way of knowing what child support or custody orders, if any, were made a part of that decree.

[2] The income tables that are included in the child support guidelines express child support obligations in monthly terms, but the court in this case ordered that the father make payment on a weekly basis. The orders in the record therefore express the father's changing child support obligations in both weekly and monthly terms. For the sake of simplicity and clarity, we will only use the monthly terms in this opinion.

[3] The State objects to the Parenting Plan and argues that neither this court nor the trial court should consider it. The State notes that it does not bear any stamp to show that it was properly filed with the trial court clerk and that there is no indication that it was ever authenticated by any witness.  The State also argues that it appears that the referee required the parties to enter into the Parenting Plan, and contends that it was inappropriate for the court to do so, as the parenting plan statutes limit their application to "actions for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child."  Tenn. Code Ann. §§ 36-6-403 and 36-6-404(a).  First, we fail to see how the State, through its role in child support enforcement, has standing to object to the parents' agreement on how they will share residential time with their child and similar parenting responsibilities. Second, the testimony establishes the parties' agreement, whether or not it was reduced to writing in a parenting plan.  It is the actual amount of time the child resides with each parent that is relevant to a possible deviation from the presumptive support amount. Tenn. Comp. R. & Regs. 1240-2-4-.02(6); *Hopkins*, 152 S.W.3d at 449.  To the extent the trial court's decision is based on the parties' testimony about the actual time the parties' child spends at each residence, the parenting plan, and any problems with it, are essentially irrelevant.

three days a week. Based on the testimony at the hearing, the residential schedule set out in the plan was consistent with the parties' current practice, which had developed based on Sean's wishes. The plan also stated that "[t]he father will pay child support, in accordance with the Tennessee Child Support Guidelines, per the judge's assessment." Thus, it was the trial court's decision, not any agreement by the parties, that determined the amount of support.

The father argued that because his son spent more than the standard amount of visitation time with him, he was entitled to a downward deviation from the presumptive amount established in the child support guidelines. The testimony showed that each parent provided for Sean while he resided with him or her, but that the mother had taken primary or sole responsibility for certain of Sean's expenses, such as clothing ($500 per year).

On April 2, 2002, the referee filed an order which reduced the father's child support obligation to $130 per month. The order included a detailed explanation of the process by which the referee reached his conclusion as to the proper amount of child support.

The State subsequently filed a motion to alter or amend the referee's order to include specific findings of fact as to the amount of child support that would be ordered if the guidelines were applied to the father's income, pursuant to Tenn. Code Ann. § 36-5-101(e)(1). The State also asked the referee to declare the amount of child support that would be ordered if the court applied the formula for downward deviation found in the case of *Casteel v. Casteel*, No. 03A01-9703-CV-00073, 1997 WL 414401 (Tenn. Ct. App July 24, 1997)(perm. app. denied March 2, 1998), and to explain why he did not apply the *Casteel* formula.

The referee partially granted the State's motion and supplemented his prior order accordingly. He stated that the presumptive amount under the guidelines for a non-custodial parent of one child with $2,000 per month in gross income would be $345 per month. He also explained that he did not include this information in his earlier order because he believed the parties did not meet the guideline definitions of obligor and obligee. He also declined to apply the *Casteel* formula, finding it inapplicable for a number of reasons.

The State subsequently filed a request for a rehearing before the Juvenile Court Judge, which was granted. The hearing consisted of legal arguments only; no additional facts or testimony were introduced. The State argued that the *Casteel* formula should have been applied to adjust the father's child support obligation to account for his additional parenting time, which the State submitted would have resulted in a child support obligation of $273.18 per month. On October 2, 2003, the Juvenile Court Judge entered an order affirming the referee's decision to reduce child support to $130 per month. This appeal followed.

While the State filed a brief in this appeal, Mr. Mardis did not and has not participated. We therefore must rely solely on the State's brief and the record to decide this case.[4]

## I. THE LAW OF CHILD SUPPORT

We must apply Tennessee law on child support that was in effect at the time of the proceedings below, and thus any description of applicable law must be read in that context. The legislature authorized the establishment of the child support guidelines to standardize the method of calculating child support awards. *Jones v. Jones*, 930 S.W.3d 541, 543 (Tenn. 1996). The guidelines were promulgated as rules by the Department of Human Services and carry what amounts to a legislative mandate. *Barnett v. Barnett*, 27 S.W.3d 904, 906 (Tenn. 2000); *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993). They apply to the modification proceeding below.[5]

The 1997 guidelines, the version applicable to this dispute, speak in terms of the obligee (the parent with whom the child primarily resides) and the obligor (the parent with whom the child does not primarily reside). Tenn. Comp. R. & Regs. 1240-2-4-.03(1). Under the guidelines, an award of child support is made to the obligee parent based in large part on the income of the obligor parent. *Gray v. Gray*, 78 S.W.3d 881, 883 (Tenn. 2002). Accordingly, "only the parent who spends the greater amount of time with the child should be awarded child support . . ."[6] *Id.* at 884.

The guidelines involve a series of determinations by the trial court, including calculation of the obligor parent's gross and net income, and application of flat percentages to that income based on the number of children to be supported, *e.g.*, 21% for one child, 32% for two children, etc. Application of that formula results in a presumptive child support award. The guidelines include other considerations that may justify a final award that differs from the presumptive amount.

---

[4]In the court below, the State filed a "Statement of the Evidence" from the hearing on the modification in advance of the hearing on its motion to alter or amend before the referee. The Statement consists of an unauthenticated transcript of the hearing of March 19, 2002. The State explained in its notice of the filing that the transcript was prepared from tape recordings of the hearings by a court reporter who had since relocated to another state and could not be located to obtain the usual certification. It was certified as accurate by the attorney who attended the hearing. No objection to the transcript appears in the record before us. Since the Statement was filed with the trial court, it is considered approved pursuant to Tenn. R. App. P. 24(b) and (f). We need not resolve whether the document is correctly characterized as transcript because it is a "stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence," under Tenn. R. App. P. 24(b), or as a Statement of the Evidence under Tenn. R. App. P. 24(c).

[5]The guidelines specifically state that they "shall be applicable in any action brought to establish or modify child support, whether temporary or permanent." Tenn. Comp. R. & Regs 1240-2-4-.02(3).

[6]Under the parenting plan legislation, that party is called the primary residential parent, which is statutorily defined as the parent with whom the child resides more than 50% of the time. Tenn. Code Ann. § 36-4-402(4). As discussed earlier, the State objects to the use of the parenting plan in the record herein. In the context of the issue before us, we see no real distinction between the definition of obligor in the guidelines and the definition of primary residential parent in the parenting plan statutes. *See Gray*, 78 S.W.3d at 884.

One of the factors to be considered in making a final award other than the formula discussed above, and the one at issue in this case, involves the amount of time the child lives with each parent.

These guidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year. These guidelines are designed to consider the actual physical custody of the child(ren), regardless of whether custody is awarded to one parent and visitation to the other or such an arrangement is ordered to be joint custody or split custody.

Tenn. Comp. R. & Regs. 1240-2-4-.02(6).

The factual scenario on which the guidelines are based, often called "standard visitation" or "standard residential schedule," envisions that the party who is not the custodial or primary residential parent will have the child eighty (80) days per year. The guidelines recognize that many parents have arrangements that do not coincide with the standard or average and that applying a formula based on one factual scenario to a different situation would be inequitable. Consequently, the guidelines specifically provide for upward as well as downward adjustments when the custody or residential schedule varies from that set out in Tenn. Comp. R. & Regs. 1240-2-4-.02(6). *See* Tenn. Comp. R. & Regs. 1240-2-4-.02(5) and 1240-2-4-.04(1)(b) (providing for an upward adjustment if the child does not stay overnight with the noncustodial or alternative residential parent at least as much as the standard visitation).

In particular, the guidelines recognize the equity in an adjustment where an obligor parent has physical custody or residential time greater than the eighty days on which the guidelines are based. "In situations where overnight time is divided more equally between the parents, the courts will have to make a case-by-case determination as to the appropriate amount of support." Tenn. Comp. R. & Regs. 1240-2-4-.04(2)(6). In addition, a downward deviation from the presumptive amount is specifically authorized in that situation. Tenn. Comp. R. & Regs. 1240-2-4-.04(2)(b) (stating that deviations may be appropriate where the physical custody or residential time is "more evenly divided between the parties than occurs in a situation where one party has an average amount of overnight visitation as defined in 1240-2-4-.02(6)").

The Tennessee Supreme Court has addressed this guideline- authorized downward deviation and stated, "If the child(ren) spend more time with the obligor than is assumed by Tenn. Comp. R. & Regs. 1240-2-4-.02(6), . . . the obligor's child support payments *should* be reduced." *Jones v. Jones*, 930 S.W.2d 541, 545 n. 5 (Tenn. 1996). Additionally, a downward deviation could conceivably include even a deviation to zero. *Gray*, 78 S.W.3d at 884. Thus, the Court has indicated that, where the facts indicate a downward deviation based on greater than average residential time is authorized, it will generally be granted, with the amount to be determined on a case-by-case basis. *Hopkins v. Hopkins*, 152 S.W.3d 447, 450 (Tenn. 2004); *Gray*, 78 S.W.3d at

884; Tenn. Comp. R. & Regs. 1240-2-4-.04(2)(6). The 1997 guidelines specifically avoided establishing a formula or other rule for setting the deviation.

Additionally, the legislature has recognized that strict application of the guidelines might not always lead to an equitable result. While it has specifically provided that courts shall apply the child support guidelines as a rebuttable presumption, Tenn. Code Ann. § 36-5-101(e)(1)(a), it has also provided:

> If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

Tenn. Code Ann. § 36-5-101(e)(1)(a).

## II. THE DECISION BELOW

According to the parties' testimony, Sean lives with his father three days a week, or 156 days a year, almost twice the 80 days contemplated under the guidelines. We, therefore, do not believe the referee erred by concluding that the father's increased residential time justified an award lower than the presumptive amount arrived at simply by application of the guidelines' formula. The difficulty arises, rather, from the method the referee used to calculate the amount of support.

The referee in this case relied upon the presumption stated in the guidelines that "the formula presumes that the obligee will be expending at least an equal percentage of net income as that of the obligor for the support of the children for whom support is sought." Tenn. Comp. R. & Regs. 1240-2-4-.02(2). Based on that statement, the referee created a method of calculating child support which had as its goal the equalization of the financial burden between the mother and the father. The referee assumed that the mother and father should each spend 37.5 percent of that party's income for Sean's support, and that this percentage would be reached by a combination of direct support (money each party expends on the child while in that party's custody) and support payments (money paid by the father to increase his support to 37.5 percent of his income and to reduce the mother's support to that same percentage of her income). The mother's income was essentially equal to or slightly greater than the father's. The result of the referee's calculations (which we will not attempt to duplicate here) was the $130 per month child support obligation.

The State argues the referee committed error in failing to apply the child support guidelines. The State is correct that the court was required to apply the guidelines. It is not entirely clear whether the court declined to apply the guidelines at all or simply declined to award the presumptive amount because a downward deviation was justified. To the extent the referee's statements indicate

-6-

he considered the guidelines inapplicable because the parents shared residential time in more equal proportions than the standard on which the guidelines are based, that conclusion would be in error. Even where the parents share exactly equal residential time, the guidelines apply to determine the amount of support a primary residential parent is awarded. *Hopkins*, 152 S.W.3d at 450.

Regardless of the referee's position on the application of the guidelines, however, it is clear that he used a calculation method that was not authorized under the law in effect at the time. The 1997 guidelines include a prohibition against consideration of the obligee's income: ". . . the income of the obligee should not be considered in the calculation of or as a reason for deviation from the guidelines in determining the support award amount . . ." Tenn. Comp. R. & Regs. 1240-2-4-.02(2). Our Supreme Court has rejected a comparative analysis of the parties' earnings as an impermissible infringement on that prohibition. *Gray*, 78 S.W.3d at 884 ("[T]he income of the obligee should not be considered in the calculation of the amount of child support awarded").[7] Therefore, despite the referee's meticulous analysis of the relative economic positions of the father and the mother, the methodology employed did not comply with applicable legal principles.

Because a downward deviation was justified on the basis of the increased time Sean lived with the father, the question before us is whether the referee's modification of support to $130 per month comports with guiding legal principles and is supported by the facts. As explained above, where a deviation is authorized due to increased residential time, the court is to determine the amount of support on an individualized basis. The 1997 guidelines provide no specific criteria or formula for calculating the effect of a greater than standard residential schedule,[8] but, instead, specifically leaves that determination to the court's reasonable discretion, with only one overriding limitation. The guidelines state that "[i]n deviating from the guidelines, primary consideration must be given to the best interest of the child(ren) for whose support the guidelines are being utilized." Tenn. Comp. Rules & Regs. 1240-2-4-.04(5).

The State argues that the amount awarded by the referee is too low and that any downward deviation for increased residential time should be calculated in accordance with the method described by this court in *Casteel v. Casteel, supra.*

In that case, like the present one, the trial court created its own formula for calculating the amount of a downward deviation in child support. As this court indicated, that "elaborate formula, so painstakingly fashioned" resulted in a determination that the father should pay $370 per month

---

[7] As the Court noted in *Gray*, the new amendments to the guidelines, effective in 2005, allow for such a comparative analysis. *Hopkins,* 152 S.W.3d at 459 n.2. They use an "income shares" approach. Consequently, the income of the primary residential parent has become a factor in calculating support. The amendments, like the referee's analysis herein, are based on a presumption that families spend a specified percentage of their income on their children.

[8] The 2005 amendments to the guidelines provide direction to courts in terms of percentage decreases tied to specific numbers of days of residential time. Since the basic approach of the amendments includes factors that could not previously be considered, it would not be appropriate to apply the new directives on deviation to support calculated under the old methodology.

instead of the $740 per month indicated by the guidelines formula. We rejected that result, but noted that the guidelines required the court to make a case by case determination of the appropriate amount of support. The court stated that "if the elaborate formula resulted in an amount of support that the circumstances and best interest of the children require we see no reason to critique the mechanics employed." *Casteel*, 1997 WL 414401, at *2.

We found that the 50% reduction in child support that resulted from the trial court's formula was excessive. The father had custody 131 days per year. This court developed and applied a different method, calculating the amount per day of support under the guidelines formula and reducing the presumptive amount by the product of the daily amount times the number of days the father had the child in excess of the 80 day standard. This resulted in a smaller reduction of child support, to $637 per month.

There is no reason to believe that this court's intention in *Casteel* was to create an invariable method to be used in every situation where a significant variation in residential time from the norm indicates the need for a modification of child support. To the contrary, this court emphasized the need to make individualized decisions based on the circumstances of each case. And, in any event, the guidelines provide for that approach. *Casteel* as well as the guidelines themselves establish that trial courts are not limited to one formula or method, so long as the final result is in the best interest of the child involved. Consequently, we decline to presumptively favor the *Casteel* method for all such cases.

Herein, the child lived with the father three days a week and with the mother four days a week. This schedule gives the father 76 days more than the standard 80 on which the guidelines are based, almost a 100% increase. However, the mother continues to have the greater amount of residential time, 52 more days per year than the father. The amount of support awarded by the referee was a deviation of $215 from the presumptive amount under the guidelines, a decrease of 62%. Whether or not this court would have arrived at a different percentage or amount as more appropriate, in the absence of specific rules to govern the calculation of a downward deviation, we are reluctant to substitute our method of calculation for that of the trial court unless that calculation resulted in an award that is not in the child's best interest.[9]

The referee recognized that each parent had fixed expenditures related to providing Sean a place to live for the time he stayed with him or her. During those times, each provided for Sean's needs, *e.g.*, food, lunch money, activities, etc. Because the mother had Sean one day per week more

---

[9]Based on the record, it appears Sean turned 18 on Nov. 14, 2003. The father's obligation to pay child support terminated on either that date or the following June, depending on when Sean's class graduated from high school. Tenn. Code Ann. § 34-1-102. *See also Kuykendall v. Wheeler*, 890 S.W.2d 785, 786 (Tenn. 1994); *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Clinard v. Clinard*, No. 01S01-9502-DV0021, 1995 WL 563858, at *3 (Tenn. Sept. 25, 1995) (rehearing denied Nov. 6, 1995). Both the events preceded submission of this appeal, and we see no beneficial purpose in requiring these parents to go through another round of hearings and potential continued litigation that would be involved in a remand.

than the father, the referee attempted to calculate an amount that would make up for her increased costs and equalize the parents' contributions to Sean's support.

At the hearing on the State's motion to alter or amend, the mother stated she was satisfied with the court's award. There was no testimony that the amount was insufficient to meet Sean's needs.[10] Consequently, there is little basis upon which to determine that the amount awarded was not in Sean's best interest.

Because the referee determined an amount of support taking into consideration the father's increased residential time, as prescribed by law, and based on the individualized facts of this case, we conclude that the award should be affirmed.

## III.

The Order of the trial court is affirmed. Tax the costs on appeal to the appellant, the State of Tennessee, ex rel. Debra Mardis.

_____
PATRICIA J. COTTRELL, JUDGE

---

[10]In both hearings, the parents displayed a cooperation and willingness to work with each other. This attitude and approach can only benefit their child and is in marked contrast to many situations we see.