IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs December 18, 2009

# STATE OF TENNESSEE, EX REL. MARKIE JADE LAXTON V. SAMUEL BYRON BIGGERSTAFF

**Appeal from the Juvenile Court for Scott County**
**No. 10564     James L. Cotton, Jr., Judge**

---

**No. E2009-01707-COA-R3-JV - FILED MARCH 5, 2010**

---

This is an appeal by the father requesting modification of his child support obligation due to his incarceration. The trial court denied relief. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Samuel Byron Biggerstaff, Tiptonville, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Warren A. Jasper, Senior Counsel, for the appellee, Tennessee Department of Children's Services.

**OPINION**

## I. BACKGROUND

This is a child support matter arising out of a paternity case. Markie Jade Laxton is the mother of a minor child born January 8, 2004. The State of Tennessee is providing child support enforcement services to Ms. Laxton ("Mother") pursuant to Title IV-D of the Social Security Act, 42 U.S.C. § 651m et seq, and Tenn. Code Ann. § 71-3-124(c) (2004)..

The State filed a petition to establish paternity against Samuel Byron Biggerstaff ("Father") on or about August 23, 2006. The petition attached an administrative order for parentage tests requiring Father to appear and submit to testing for parentage determination.

A hearing was held on the petition on February 6, 2007. An order of continuance, entered seven days later, stated the hearing was continued because Father was served by "unclaimed mail," did not appear for the paternity testing, and failed to appear for the hearing. The order also related that paternity would be established without testing if Father did not appear at the March 13, 2007 hearing.

On the designated hearing date, Father again did not appear. The referee determined that Father had been served on November 9, 2006 by "unclaimed mail," that he failed to appear for testing, failed to appear twice for hearings, and that he would be established as father without testing. The amount of retroactive child support was found to be $7,296 and payments were set at $292 per month ($192 per month and $100 on the arrearage). The referee's order was subsequently approved by the trial court.

The record reveals that Father came into the custody of the Tennessee Department of Corrections (TDOC) in March 2008. In March 2009, he requested that the trial court order DNA testing in a pro se petition to determine paternity. The results of the court-ordered testing showed a 99.99% probability that Father was the biological parent of Mother's child.

A hearing was held on July 14, 2009, upon a motion by Father to suspend child support payments and/or to stop continuous accumulation. The trial court noted that it had allowed the DNA testing because of the service issues. Jail records were reviewed to confirm that Father was not in custody when served with the petition to determine paternity. The original order was found to be valid and reaffirmed based upon proper service and the fact that the testing showed paternity. The State was awarded a judgment of $11,490 as of June 30, 2009, and child support was set at $292 per month including $100 for retroactive support. The referee's order was confirmed by the trial court and entered on July 27, 2009. Father thereafter filed a timely notice of appeal.

## II. ISSUES

The first two issues raised by Father address the continuing child support obligation during his incarceration and the accumulating arrearage. The third issue addresses alleged errors regarding "affirming" the order establishing paternity upon which the child support obligation is based.

## III. STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo upon the record, accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000); *Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006). A trial court's conclusions of law are reviewed de novo with no presumption of correctness. *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004).

Setting child support and determining deviations from the applicable guidelines is in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State ex rel. Vaughan v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

## IV. DISCUSSION

The proper inquiry in a petition to modify child support is whether there is a "significant variance" between the current obligation and the obligation set by the guidelines. *Kaplan v. Bugalla*, 188 S.W.3d 632, 637 (Tenn. 2006). An entitlement to a modification pursuant to the significant variance test may be negated by a finding of voluntary underemployment. *See Kaplan v. Bugalla*, No. M2006-02413-COA-R3-CV, 2007 WL 4117787, at *4 (Tenn. Ct. App. M.S., Nov. 16, 2007). The burden is upon the petitioner to establish proof of the variance. *Turner v. Turner*, 919 S.W.2d 340, 345 (Tenn. Ct. App. 1995).

### A.

Father contends that he is incarcerated and has insufficient income to meet the monthly child support payments. He essentially requests that the child support payments be suspended or reduced until such time that he is released from prison.

Cases from other jurisdictions dealing with this issue may be divided roughly into three different approaches:

The first approach, dubbed the "no justification" rule, generally deems criminal incarceration as insufficient to justify elimination or reduction of an open obligation to pay child support. The second approach, known as the "complete justification" rule, generally deems incarceration for criminal conduct as sufficient to justify elimination or reduction of an existing child support obligation. Finally, the third approach is the "one factor" rule, which

generally requires the trial court to simply consider the fact of criminal incarceration along with other factors in determining whether to eliminate or reduce an open obligation to pay child support.

*Yerkes v. Yerkes*, 824 A.2d 1169, 1172 (Pa. 2003) (internal citations omitted).

Under Tennessee law, there is no presumption that a parent is willfully or voluntarily underemployed or unemployed. *In re K.O.*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at *4 (Tenn. Ct. App. M.S., July 31, 2008). The party alleging that a parent is willfully or voluntarily underemployed or unemployed carries the burden of proof. Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(a)(2)(ii) (2008).

In *State ex rel. C.M. v. L.J.*, No. M2005-02401-COA-R3-JV, 2007 WL 1585170, at *2 (Tenn. Ct. App. M.S., May 31, 2007), the sole issue was "whether a parent who is incarcerated for the commission of a crime is willfully or voluntarily unemployed for purposes of child support." This court held:

Before the 2005 amendments [to the Tennessee Child Support Guidelines], the courts declined to hold that the commission of a crime, without more, that resulted in the parent's incarceration, was sufficient to sustain a finding of willful or voluntary unemployment. *See Pennington v. Pennington*, No. W2000-00568-COA-R3-CV, 2001 WL 277993, at *4 (Tenn. Ct. App. March 14, 2001). The *Pennington* court declined to find Mr. Pennington voluntarily unemployed as a result of the act leading to his incarceration, reasoning:

"Mr. Pennington did not intend to become incarcerated and unemployed when he made the choice to use cocaine; thus, the record does not support a finding that Mr. Pennington was willfully and voluntarily unemployed." *Pennington*, 2001 WL 277993, at *4; *see also Coates v. Coates*, No. M2001-01928-COA-R3-CV, 2002 WL 31528512 (Tenn. Ct. App. Nov. 15, 2002); *Johnson v. Johnson*, No. M2003-00866-COA-R3-CV, 2004 WL 2218478 (Tenn. Ct. App. Oct. 2, 2004). In *Coates*, this court rejected the proposition that "a parent's dishonest acts which lead to unemployment constitute willful and voluntary unemployment." *Coates*, 2002 WL 31528512, at *3 (citing *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000)). "[A]s a logical extension of that principle, we have also held that unemployment or underemployment resulting from incarceration is not willful and voluntary." *Coates*, 2002 WL 31528512, at *3 (citation omitted); *Johnson*, 2004 WL 2218478, at *4.

*Pennington* and its progeny clearly state that a parent is not willfully or

voluntarily unemployed as a result of the act leading to incarceration. Thus, the question is whether the 2005 amendments to the regulations supplant *Pennington* and its progeny. We have determined they do not. Our determination is based on two factors.

First, we note the language in the 2005 regulations is merely permissive. Instead of using mandatory terminology, the 2005 amendments are based upon the permissive phrases "can be" and "is not limited to." See Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(d)(ii) and 1240-2-4-.04(3)(d)(i). Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(d)(ii) provides that a determination of willful and voluntary unemployment or underemployment *can be* based on any intentional choice or act that affects a parent's income. Such terminology – can be – does not, however, mandate that any and all intentional choices that affect a parent's income constitute willful or voluntary unemployment. The same rationale applies to Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(d)(i) which merely provides that the determination of willful and voluntary unemployment is not limited to occupational choices that are motivated only by an intent to avoid or reduce child support obligations.

The second factor in our determination is that the State has the burden of proof. *See Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003); *see also Richardson v. Spanos*, 189 S.W.3d 720, 727 (Tenn. Ct. App. 2005).

Based upon the foregoing analysis, we conclude that without other evidence, direct or circumstantial, of willful or voluntary underemployment or unemployment, the mere fact a parent is incarcerated for committing a crime is insufficient to sustain a finding that the commission of the crime constitutes a willful or voluntary attempt to be underemployed or unemployed for purposes of child support.

. . . [W]e find . . . the State failed to carry its burden.

*Id.* at *2-3.

Last year, in the context of a termination of parental rights case, another panel of this court in *In re C.T.B.*, No. M2009-00316-COA-R3-PT, 2009 WL 1939826 (Tenn. Ct. App. M.S., July 6, 2009), found "the reasoning employed [in *Pennington* and *State ex rel. C.M. v. L.J.*] . . . to be persuasive . . . ." *Id.* at *5. The court noted:

In the context of determining whether a parent's unemployment or underemployment is "willful" under the child support guidelines, we have refused to consider incarceration or unemployment as a result of a parent's wrongful behavior to be enough to establish willfulness. For example, in *Pennington v. Pennington*, the father was incarcerated for drug offenses and lost his medical license. *Pennington*, No. W2000-00568-COA-R3-CV, 2001 WL 277993, *1 (Tenn. Ct. App. Mar. 14, 2001). We declined to find the father's unemployment to be willful, stating that he "did not intend to become incarcerated and unemployed when he made the choice to use cocaine." *Id.* at *4. Similarly, in *Wilson v. Wilson*, the father's employment as a car salesman was terminated after he was accused of pocketing the proceeds of extended warranty sales he made to customers. *Wilson*, 43 S.W.3d 495, 496 (Tenn. Ct. App. 2000). This court rejected the argument that because the father's criminal acts were willful and voluntary, he should be considered willfully and voluntarily underemployed. *Id.* at 497. We concluded that willfulness under the guidelines required "an intent on the part of the parent to reduce or terminate his or her income." *Id.*; *see also State ex rel. C.M. v. L.J.*, No. M2005-02401-COA-R3-JV, 2007 WL 1585170, *2 (Tenn. Ct. App. May 31, 2007); *Johnson v. Johnson*, No. M2003-00866-COA-R3-CV, 2004 WL 2218478, *4 (Tenn. Ct. App. Oct. 1, 2004).

We find the reasoning employed in these cases to be persuasive in the present context and, therefore, decline to accept the trial court's conclusion that Father willfully failed to pay child support . . . .

*Id.* at *5.

The question of whether incarceration provides grounds for reduction of support was also raised in *Langford v. Langford*, No. M2007-01275-COA-R3-CV, 2008 WL 4367576 (Tenn. Ct. App. M.S., Sept. 23, 2008). In *Langford*, father appealed a default judgment entered against him for child support while he was imprisoned. *Id.* at *1. On appeal, father relied exclusively upon his incarceration as justification for modification of his support obligation, claiming he could not pay the support ordered as it was based on pre-incarceration earning levels. *Id.* We held that "Father's imprisonment does not automatically work to terminate his duty to support." *Id.* at *2. In the absence of a transcript or statement of evidence, this court noted that "we must conclusively presume the record and proof support the trial court's findings of fact . . . ."

Child support in this state is governed by Tenn. Code Ann. §36-5-101 (Supp. 2009). "In making [its] determination concerning the amount of support . . . the court shall apply,

as a rebuttable presumption, the child support guidelines, as provided in this subsection . . . ." Tenn. Code Ann. § 36-5-101(e)(1)(A). "Child support guidelines have been promulgated by the Tennessee Department of Human Services and adopted by the General Assembly. The purposes, premises, guidelines for compliance, and criteria for deviation from the guidelines carry what amounts to a legislative mandate." *Barnett v. Barnett*, 27 S.W.3d 904, 906 (Tenn. 2000) (citing *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993)).

The guidelines have been revised and directly address the question of whether support should be reduced based upon incarceration. The guidelines provide specifically that

> . . . [c]riminal activity and/or incarceration shall not provide grounds for reduction of any child support obligation. Therefore, criminal activity and/or incarceration shall result in a finding of voluntary underemployment or unemployment under this section, and child support shall be awarded based upon this finding of voluntary underemployment or unemployment.

Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(a)(2)(ii)(I) (2008). The cited section does not contain permissive language as discussed in our prior opinions on this subject. Rather, the term "shall" is utilized. In our view, the guidelines' use of that term leaves the trial court with no discretion. *See,* e.g., *Barnett*, 27 S.W.3d at 906 (citing, e.g., *Louisville & Nashville R. Co. v. Hammer*, 236 S.W.2d 971, 973 (Tenn. 1951) (holding use of "shall" in statute requires mandatory compliance)). Thus, the trial court did not abuse its discretion in rejecting Father's petition seeking a reduction of his support payments on the basis of his incarceration.

B.

Father also notes that he was a juvenile when his child was born. Father turned 17 only days after the child's birth. We surmise that he is asserting that he should not be responsible for child support during the period of time he was a juvenile.

In *In re Parentage of J.S.*, 550 N.E.2d 257 (Ill. Ct. App. 1990), a case in which a minor father was ordered to pay child support for his son, the court stated:

> The respondent initially argues that he should not be required to support his child, because he was a 15-year-old minor when the child was conceived. He contends that Illinois public policy protects minors from the consequences of their improvident conduct.
>
> We note that contrary to the respondent's position, Illinois public policy has

never offered blanket protection to reckless minors. At the same time, Illinois public policy has recognized the blanket right of every child to the physical, mental, emotional, and monetary support of his or her parents. The public has an interest in protecting children from becoming wards of the state.

In the instant case, we find that the public policy mandating parental support of children overrides any policy of protecting a minor from improvident acts. We therefore hold that the trial court properly found that the respondent was financially responsible for his child.

550 N.E.2d at 258 (internal citations omitted). We concur in the reasoning of the Illinois court. Having been cited with no authority for the proposition that the minority of a parent should relieve that parent from the obligation of financially supporting his or her child, we hold that the minority of Father when his child was born is irrelevant to the matters raised in this appeal.

### C.

Father has raised the issue of the validity of the paternity order. The record establishes that the petition was properly served by mail. Father did not claim the mail. When he failed to appear at the scheduled hearings, paternity was established by the trial court. Father finally sought, inter alia, a paternity test. His appearance in this matter at that point constituted a general appearance[1] with respect to the earlier paternity petition. Following his appearance, his paternity was conclusively established.

A court's lack of personal jurisdiction may be waived by making a voluntary "general appearance" before the court in order to defend the suit on the merits. *Dixie Savings Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988); *Tennessee Dept. of Human Svcs. v. Daniel*, 659 S.W.2d 625, 626 (Tenn. Ct. App. 1983). We find that Father's general appearance to request an order for a paternity test constituted waiver of any issues associated with alleged failure to properly serve him the previous paternity petition. *Id.* Nothing in the record contradicts this finding.

---

[1]"General appearances consist of acts from which it can reasonably be inferred that the party recognizes and submits itself to the jurisdiction of the court." *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 99-100 (Tenn. 1984). All appearances are deemed to be general appearances unless the contrary appears. *Akers v. Gillentine*, 231 S.W.2d 372, 376 (Tenn. Ct. App. 1950).

## V.  CONCLUSION

The judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant, Samuel Byron Biggerstaff.  This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and for the collection of costs assessed below.


_____
JOHN W. McCLARTY, JUDGE