# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 17, 2011 Session

## IN RE: ANDREA A. R.

**Appeal from the Juvenile Court for Davidson County**
**No. 20084618     Betty Adams Green, Judge**

**No. M2011-00574-COA-R3-JV - Filed February 7, 2012**

Father appeals an order of the juvenile court requiring Father to pay private school tuition as an upward deviation from the presumptive child support amount, which more than doubled his child support obligation. We have determined that the trial court erred by ordering an upward deviation for private school tuition without first determining whether the extraordinary educational expense was appropriate based upon the parents' financial abilities and the lifestyle of the child and by failing to make the requisite findings of fact to establish that Father has the ability to pay all of the tuition in addition to the presumptive child support. Therefore, we reverse the upward deviation for private tuition and remand the issue of the extraordinary educational expense to the trial court to make the requisite findings to determine, *inter alia*, whether private schooling is appropriate based upon the facts of this case and, if so, to determine which parent pays what portion of the private school tuition and costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Andrew N. Egan and Vanessa Saenz, Hermitage, Tennessee, for the appellant, Victor R.

Robert A. Anderson, Nashville, Tennessee, for the appellee, Renza P.A.

## OPINION

The parties in this action were involved in a brief relationship, which resulted in the birth of their child in May of 2003. The parties were never married. In August 2008, Mother filed a Petition to Establish Parentage and Set Child Support and Insurance Coverage in the

Juvenile Court for Davidson County. In the Petition, Mother alleged that Father initially provided financial support following the birth of the child but that he stopped paying support in May 2004; however, he continued to pay the child's daycare expenses even after terminating other support. On December 11, 2008, Father filed a response and counter-petition requesting genetic testing to determine if he was the biological father. On that same day, the parties appeared before the juvenile court and announced an agreement on the issues of DNA testing and pendente lite child support. An order was entered on January 30, 2009, which set Father's pendente lite support obligation at $520 per month effective the first week of January 2009.

On September 9, 2009, an evidentiary hearing on the Petition was held before the juvenile court magistrate; an order was entered on September 16, 2009, in which the magistrate found that Mother was not entitled to any child support arrears because Father had "fully supported" the child prior to the entry of the pendente lite child support order. The magistrate did not alter the amount of the pendente lite child support stating that all previous orders should remain the same. Mother appealed to the juvenile court judge.

The de novo appeal was tried before the juvenile court judge over three days, on August 17, December 6, and December 7, 2010.[1] Mother and Father testified at the trial regarding their respective sources of income and the only other witness was a bookkeeper who prepared Father's taxes both personally and for the business, Rossi Family Services, Inc., where he worked at the time of the hearing and which he previously owned. Principally at issue during the trial was Father's income and the recent sale of his principal asset, Rossi Family Services, Inc., for only $20,000.

In an order entered January 28, 2011, the juvenile court found that Father was "totally lacking in credibility as a witness," and specifically found "a total lack of credibility on the part of [Father] in the testimony that he sold a business, which at the time was grossing $400,000 annually, for no more than $20,000 payable in three (3) separate installments." For the purpose of calculating child support, the court found that Mother's income was $1,300.00 and Father's income was $2,239.56 per month. Based on these findings the court ordered Father to pay child support in the amount of $767 per month, retroactive to September 23, 2009. The court also ordered Father to pay the child's monthly private school tuition, which was currently $720 per month, as well as $50 per month in medical expenses and child care during the summers; however, Father was not responsible for school uniforms, school activities, or extracurricular school activities. The issue of child support arrears was reserved.

---

[1]At the beginning of trial on December 6, 2010, Father's attorney requested a continuance, which the trial court denied as to the issue of current child support.

Mother filed a motion to clarify the trial court's January order on whether the private school tuition was a separate expense from child support. On February 11, 2011, the trial court issued an order stating that Father was responsible for the private school tuition, which would be a deviation in the child support worksheets and would be in addition to the normal child support calculations, noting that Father had previously paid for the child's school tuition up until Mother filed her petition to establish paternity and set child support. The order also provided that Father's child support obligation was $841.00. Further, the order stated that Mother was responsible for the costs of book fees, uniform costs, extracurricular activities, and summer child care. Father filed a timely appeal from this order.

**ANALYSIS**

Father raises several issues. He contends the trial court erred in denying two requests for a continuance and he challenges the timing of a post-trial ruling. Father also contends the trial court abused its discretion in assessing the private school tuition as an extraordinary educational expense in an "arbitrary amount" without a finding that private school was appropriate and without making the requisite findings required by the Tennessee Child Support Guidelines, specifically Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d) that governs extraordinary educational expenses. We discuss these issues in turn.

I.

The decision whether to grant or deny a motion for continuance lies in the sound discretion of the trial court. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997) (citing *Moorehead v. State,* 219 Tenn. 271, 409 S.W.2d 357, 358 (1966)). We will not disturb the trial court's ruling on the motion unless the record clearly shows an abuse of discretion and prejudice to the party seeking a continuance. *Id*. (citing *State v. Strouth,* 620 S.W.2d 467, 472, (Tenn.1981)).

Father contends that the trial court erred in denying his request for a continuance on December 6, 2010 based upon his allegation that Mother failed to comply fully with his discovery requests. In his brief, Father is very vague as to the discovery Mother failed to turn over although he references Mother's failure to turn over her W2 forms; however, Mother's income tax returns from 2004 until 2009 were introduced at the trial. Additionally, Mother testified at trial and was cross-examined extensively by Father's attorney regarding her sources of income. We also note that Father did not file a motion to compel. Father's other basis for the request for a continuance when the trial resumed was that he was now

represented by different counsel than when the trial began on August 17, 2010.[2] The trial court denied the continuance as it pertained to the issue of current child support noting that the matter had been continued previously and that Father's "new" attorney had represented him in the hearing before the juvenile court magistrate on the same issue. The record reflects that the court had already held one day of trial on the matter, that Father's attorney was familiar with the action as she had previously represented him before the juvenile court magistrate, and that the court chose only to proceed on the issue of current support. Father has also failed to show how he was prejudiced by the denial of the continuance. Finding no abuse of discretion, we affirm the denial of Father's motion for a continuance on December 6, 2010.

Father next challenges the entry of a post-trial order as untimely. The trial transcript reveals that at the close of the trial on December 7, the trial court stated that it would provide a sixty-day window before the order became final. Father asserts that the sixty-day window was for discovery to be completed before the entry of the order. The trial ended on December 7, 2010 and the order challenged by Father was not entered until January 28, 2011. More importantly, Father has failed to show how the timing of the entry of the order prejudiced him. Accordingly, we find no merit to this issue.

II.

We now turn to Father's main issue. Father contends that the trial court erred in assessing against him, in addition to presumptive child support, private school tuition as an extraordinary educational expense without finding that private schooling was appropriate based upon the parents' financial abilities and the lifestyle of the child if the parents were living together and that the trial court failed to articulate that he had the ability to pay the full amount of tuition in addition to the presumptive child support as required by Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(i).

A. DEVIATIONS FROM THE CHILD SUPPORT GUIDELINES

The determination of child support in Tennessee is governed by the Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tennessee Code Annotated § 36-5-101(e). *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). The statute requires the court to apply the Child Support Guidelines as a rebuttable presumption. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(a) (2008). A court may order a deviation from the amount of support if the deviation complies with the requirements of the Child Support Guidelines, and "[t]he amount

---

[2]Father's attorney had previously represented him in the hearing before the juvenile court magistrate.

or method of such deviation is within the discretion of the tribunal." Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b). However, the trial court is required to "state in its order the basis for the deviation and the amount the child support order would have been without the deviation." *Id.* "In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined." *Id.*

The Child Support Guidelines further provide that:

(c) When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:

1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and
2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

3. How, in its determination,

(i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and
(ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(a)-(c) (2008).

The Child Support Guidelines also state that when making its determination regarding a request for deviation the trial court:

[S]hall consider all available income of the parents as defined by this chapter and shall make a written finding that an amount of child support other than the amount calculated under the Guidelines is reasonably necessary to provide for the needs of the minor child or children for whom support is being determined in the case immediately under consideration.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(a) (2008).

B. EXTRAORDINARY EDUCATIONAL EXPENSES

The Guidelines also specifically address educational expenses as a deviation from the standard child support amounts:

(d) Extraordinary Expenses.

The Schedule includes average child rearing expenditures for families based upon the parents' monthly combined income and number of children. Extraordinary expenses are in excess of these average amounts and are highly variable among families. *For these reasons, extraordinary expenses are considered on a case-by-case basis in the calculation of support and are added to the basic support award as a deviation so that the actual amount of the expense is considered in the calculation of the final child support order for only those families actually incurring the expense. These expenses may be, but are not required to be, divided between the parents according to each parent's [Percentage of Income].*[3]

    1. Extraordinary Educational Expenses.

    (i) *Extraordinary educational expenses may be added to the presumptive child support as a deviation.* Extraordinary education expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.

    (ii) In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.

---

[3] Tenn. Comp. R. & Regs. 1240-02-04-.02(19) provides that:

The Percentage of Income (PI) for each parent is obtained by dividing each parent's Adjusted Gross Income (AGI) by the combined total of both parents' AGI. The PI is used to determine each parent's pro rata share of the Basic Child Support Obligation (BCSO), as well as each parent's share of the amount of additional expense for health insurance, work-related childcare, and recurring uninsured medical expenses.

(iii) *If a deviation is allowed for extraordinary educational expenses, a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the Worksheet in the deviation section.*

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d) (2008) (emphasis added).

## C. THE TRIAL COURT'S FINDINGS

The trial court made two written findings regarding child support and educational expenses. The first appears in the January 28, 2011 Order:

From the testimony presented, the exhibits introduced both during this hearing and during the previous hearing, and from the arguments of Counsel, the Court FINDS that [Father] is totally lacking in credibility as a witness. The Court specifically FINDS a total lack of credibility on the part of [Father] in the testimony that he sold a business, which at the time was grossing $400,000 annually, for no more than $20,000 payable in three (3) separate installments. The Court FINDS that the monthly income for [Mother] for the purpose of child support guideline calculations should be $1,300.00. The current monthly income to be used for child support guideline calculations for [Father] should be $2,239.56. The Court FINDS that the Child Support Worksheets should reflect an obligation to pay the monthly tuition for the parties' child ($720.00 per monthly currently), $50.00 per month in recurring medical expenses not covered by insurance, and the child care for the child during the summers ($1,040.00 for 2010). The Court FINDS that [Father] should not be responsible to pay for school uniforms, school activities, or school year extracurricular activity charges for the parties' child. The Court FINDS that the child support amount reflected in the attached Child Support Worksheets, incorporated herein by reference, shall have an effective date of the date of the appeal by [Mother] from the Magistrate's decision to this Court. The Court FINDS that all other matters should be reserved.

It is, therefore, **ORDERED**, **ADJUDGED**, and **DECREED** that [Father] shall pay [Mother] $767.00 per month in child support for [Child].

The second appears in the order entered on February 11, 2011, wherein the court made the following additional findings:

> The Court, after hearing the trial testimony, has been of the opinion that, while [Mother] should continue to pay the costs of any book fees, uniform costs, extracurricular fees, summer child care, etc., for the parties' child, [Father] who had paid for the child's tuition at the private school until [Mother] filed a Petition to establish paternity and set support, should pay the school tuition for the child. The Court recalls that [Mother] is currently allowed by the school to pay less than the full cost of tuition. The Court is ordering that [Father] pay the tuition, whatever amount that is or becomes. This calculation shall be included as a deviation in the Child Support Worksheets and shall be in addition to the normal child support calculations and shall be subject to recalculation with tuition increases.
>
> The Court FINDS, based on the attached Child Support Worksheets, that current child support shall be $841.00 per month.

In the Child Support Worksheet attached to the second order, Mother's Adjusted Monthly Gross Income is $1,300 and Father's Adjusted Gross Income is $1,890[4], and Mother's Percentage Share of Income is 41% and Father's is 59%. Based upon their respective income, Father's Presumptive Child Support Obligation was calculated to be $398.00 per month. With the upward deviation for school tuition (calculated over twelve months) of $442.50 per month[5], the Final Child Support Order requires Father to pay $841.00 per month.

## D. FATHER'S SUPPORT OBLIGATION

Father does not challenge the presumptive child support obligation award; he challenges the upward deviation for private school tuition. Father contends the trial court failed to articulate a finding that the extraordinary educational expense was appropriate based upon the parents' financial abilities and the lifestyle of the child and failed to articulate that he had the ability to pay the full amount of tuition in addition to the presumptive child

---

[4]Father's Monthly Gross Income is listed as $2,239.56 but Father has other children and he receives a credit for in-home children of $349.50 per month.

[5]The amount of tuition is not clear but the record suggests annual tuition was $6,480 but Mother was eligible for reduced tuition in the amount of $5,310, which if paid over twelve months would be $442.50 per month.

support as required by Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(i). This argument is based on principles and amendments to the guidelines applied in *Richardson v. Spanos*, 189 S.W.3d at 727, which superseded a previous non-discretionary standard for allocation of education expenses that was applied in *Barnett v. Barnett*, 27 S.W.3d 904, 909 (Tenn. 2000).

*Barnett* and *Richardson* addressed the appropriateness of a private school education and how the private school tuition and related expenses should be allocated between the parents based upon the guidelines then in effect. Applying a now superseded version of the guidelines, *Barnett* stood for the proposition that both parents "may be obligated to pay" private school tuition if the primary residential parent had the unilateral authority to make educational decisions on behalf of the child such as enrolling a child in private school without the other parent's consent. *Richardson*, 189 S.W.3d at 727 (citing *Barnett*, 27 S.W.3d at 909). This is because at the time of *Barnett*, Tenn. Comp. R. & Regs. 1240–2–4–.04(1)(c) (Oct.1989) stated that "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance *shall be added to the percentage* calculated in the above rule." *Richardson*, 189 S.W.3d at 727 n.3 (emphasis added). The guideline applied in *Barnett* was later amended, making the allocation of educational expenses discretionary instead of mandatory.[6] Thus, when *Richardson* was decided, the court applied the amended guideline. As the court explained:

> Five years ago, the Tennessee Supreme Court, construing an earlier version of the Child Support Guidelines, [footnote omitted] held that private school tuition was an "extraordinary educational expense" that could trigger an upward deviation from a base child support award. *Barnett v. Barnett*, 27 S.W.3d 904, 907 (Tenn. 2000). While the court did not address the role that necessity or appropriateness should play in determining whether private school tuition was an extraordinary educational expense, this court had earlier held that the necessity of the expenditure was not a controlling factor and that an upward deviation was warranted regardless of whose decision it was to send the child to private school. *Umstot v. Umstot*, 968 S.W.2d 819, 824–25 (Tenn. Ct. App. 1997).
>
> . . . However, the court also made it clear that the primary residential parent's income could be considered in calculating how much the upward deviation should be. *Barnett v. Barnett*, 27 S.W.3d at 909. Accordingly, in cases like this one, this court has consistently approved arrangements requiring the non-custodial parent to pay only a portion of the private school expenses even

---

[6]This regulation has since been revised and now provides for a more discretionary standard. Tenn. Comp. R. & Regs. 1240-2-4-.07 (2008).

when the non-custodial parent's income far exceeds that of the primary residential parent. *Turnage v. Turnage*, No. W2003–02790–COA–R3–CV, 2004 WL 2607767, at *4 (Tenn. Ct. App. Nov.15, 2004) (affirming an order requiring the non-custodial parent to pay 50% of the private school tuition); *Earthman v. McRae*, No. W2002–00564–COA–R3–CV, 2003 WL 1860527, at *2–3 (Tenn. Ct. App. Apr.1, 2003) (requiring the non-custodial parent to pay 65% of the private school tuition).

These decisions prompted the Department of Human Services to revise the Child Support Guidelines to further elaborate on the procedure and factors to be considered when dealing with extraordinary educational expenses. The Child Support Guidelines now confirm that additional support for these expenses should be calculated separately and should be added to the basic support award. Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d) (Mar. 2005); *see also Huntley v. Huntley*, 61 S.W.3d 329, 339 (Tenn. Ct. App. 001); *Dwight v. Dwight*, 936 S.W.2d 945, 950 (Tenn. Ct. App. 1996). *They also provide that these expenses should be considered on a case-by-case basis and that the courts should also consider whether the private elementary or secondary schooling is "appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together."* Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d)(1)(ii).

*Richardson*, 189 S.W.3d at 727-28 (emphasis added).

Accordingly, the first issue to be determined in *Richardson* was whether private schooling was "appropriate" based upon "the parents' financial abilities" and "the lifestyle of the child." *Id*. In that case the mother, Ms. Richardson, had unilaterally enrolled the child at Currey Ingram, a private school for students with special needs and asked the court to require the father, Dr. Spanos, to pay or share in the cost of the private school tuition. *Id*. at 723-24. The trial court declined to require Dr. Spanos to pay any portion of the tuition, for three reasons: one was that Ms. Richardson failed to prove that the education their child was receiving at public school was not meeting his needs; two, she could not afford the tuition at the private school when she enrolled their son and; three, Ms. Richardson had not consulted with Dr. Spanos before she enrolled their child in the private school. *Id*. at 728. On appeal, we found that these reasons did not support the trial court's decision not to require Dr. Spanos to pay a portion of the private school tuition, noting:

Ms. Richardson is raising the parties' child by herself and thus it falls to her to make educational decisions on behalf of her son. These educational decisions include choosing between public and private school, and while

Tennessee law encourages consultation among parents, it does not compel Ms. Richardson to consult Dr. Spanos when she makes these decisions. There is no question that the parties' son has special educational needs, and thus it is not surprising that Ms. Richardson desires to enroll the parties' son in a school best suited to help him maximize his potential. The fact that she has chosen a private school over a public school is of no relevance except insofar as the parties' joint ability to pay the tuition and other expenses to enroll the child in the private school.

*Id.*[7]

After finding that Ms. Richardson was capable of earning $75,000 per year[8] and that Dr. Spanos's annual salary was $87,360, for a combined income in excess of $160,00 per year, the court reasoned that if the parties were living together, they could afford to enroll their child at Currey Ingram; thus, sending the child to Currey Ingram "was consistent with and appropriate to the parties' financial abilities." *Id.* Furthermore, based on the parties' income, the court concluded that Dr. Spanos should pay 55% and Ms. Richardson should pay 45% of the expenses of enrolling their son at Currey Ingram. *Id.* On remand, the trial court was directed to "establish the amount of the required upward deviation in accordance with Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d)(1)(iii)." *Id.*

Although the tuition expense at issue here is less than at issue in *Richardson*, the principles espoused in *Richardson* are applicable as well as the fact finding protocol mandated in the child support guidelines. The extraordinary educational expense guideline mandates that the trial court shall, first, consider "whether the private elementary or secondary schooling 'is appropriate to the parents' financial abilities and the to the lifestyle of the child if the parents and the child were living together.'" *Id.* (quoting Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(ii) (2005)). If the court finds private schooling is appropriate, then the trial court is required to calculate the extraordinary education expenses separately and add them to the base child support award. *Id.* (citing Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)). The record before us reveals that the trial court did not make the required factual determinations that private schooling was appropriate, based upon the facts of this case. The court also did not make the specific determination that Father had the ability to pay tuition of $442.50 per month, in addition to the presumptive child support obligation of $398.00, for a total of $841.00 per month.

[7]In a footnote to the last sentence, the *Richardson* court stated that the inquiry "is not whether the custodial parent can afford the private school tuition on his or her own . . . [t]he question is whether both parents can together afford the private school tuition." *Id.* at 728 n.5.

[8]After not working for a few years, Ms. Richardson had re-entered the workplace during the divorce.

What is lacking in this case are the requisite findings of fact to justify the extraordinary educational expense for private school tuition. The applicable legal standard requires that the trial court determine whether private school is appropriate based on the facts of this case. *Richardson*, 189 S.W.3d at 728; Tenn. Comp. R. & Regs. 1240–2–4–.07 (2)(d)(1). As *Richardson* instructs, whether it is appropriate to send the child to private school must be made on a case-by-case basis. *Id*. (finding private schooling appropriate because the parents "would have been able to afford to enroll their child at Currey Ingram because their combined income exceeds $160,000 per year."). The only justification for private schooling in this record, and for Father to pay all of the tuition instead of a percentage, derives from the fact that Father had paid for private schooling prior to the commencement of these proceedings.[9] However, this justification is undermined by the fact that tuition was all Father was paying at the time. It is further undermined by the parties' meager income as found by the trial court.

We acknowledge that Father lacks credibility, as the trial court correctly found, and agree that it is implausible that Father sold his successful business for a mere $20,000. Nevertheless, a lack of credibility does not, without more, establish that Father has the ability to pay $841.000 in child support, particularly since the trial court made the specific finding that Father's gross income was a mere $2,239.56 a month and his adjusted gross income was a mere $1,890.06 per month. Comparing the economic facts of this case with *Richardson*, we note that the private tuition in this case is substantially less than *Richardson*; however, the parents' combined income is drastically less than *Richardson.* In that case the parents combined annual income was in excess of $160,000; here, the combined income is less than $45,000 a year, a mere 28% of the parents' income in *Richardson*.

For the foregoing reasons, the upward deviation of $442.50 per month for school tuition is reversed and this issue is remanded to the trial court to make the requisite findings to determine, *inter alia*, whether private schooling for the child is appropriate based upon the facts of this case. *See Richardson*, 189 S.W.3d at 728; *see also* Tenn. Comp. R. & Regs. 1240-2-4-.07. If the court finds that private schooling is appropriate, then it shall determine who pays what portion of the private school tuition and costs attendant thereto.

---

[9]This is evident from the court's finding in the second order, where the court stated: "[Father] who had paid for the child's tuition at the private school until [Mother] filed a Petition to establish paternity and set support, should pay the school tuition for the child."

**IN CONCLUSION**

The judgment of the trial court is affirmed in part, reversed in part and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE