IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session

## JENNIFER ERDMAN v. MARK ERDMAN

**Appeal from the Chancery Court for Williamson County**
**No. 44359     Deanna B. Johnson, Judge**

_____

**No. M2018-01668-COA-R3-CV**

_____

This is a divorce case. For most of the parties' marriage, the wife was a homemaker and the husband worked as a pharmaceutical sales representative. After husband was granted a divorce, the wife filed an appeal with this Court raising several issues for our review. Among other things, the wife takes issue with the trial court's classification and division of property and its decision to deny her alimony. For the reasons stated herein, the judgment of the trial court is affirmed in part, reversed in part, vacated in part, and remanded for such further proceedings as are necessary and consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; Vacated in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Sarah Richter Perky, Franklin, Tennessee, for the appellant, Jennifer Erdman.

Roger Reid Street, Jr., and Elizabeth A. Russell, Franklin, Tennessee, for the appellee, Mark Erdman.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The parties to this appeal, Jennifer Erdman ("Wife") and Mark Erdman ("Husband"), married in May of 2000. Wife entered the marriage with one child from a prior marriage, whereas Husband had never previously been married and had no children. Over time, six children were ultimately born of the marriage.

Although Wife was employed by her parents' businesses at the time of the marriage, she stopped working in 2001 when the parties' oldest child was born. For the

majority of the marriage, Wife served as a homemaker, although she occasionally supplemented the family's income by assisting with local soccer tournaments, among other endeavors. At the time of trial in this matter, Wife had resumed work in her family's businesses, earning a little over $50,000.00 per year as a result of this employment. For his part, Husband served as the primary breadwinner during the marriage, working as a drug sales representative for Pfizer. In 2017, he earned approximately $190,000.00.

The litigation in this matter commenced in July 2015 when Wife filed a complaint for divorce. Wife averred that the parties had experienced irreconcilable differences in their marriage, and pleading in the alternative, she accused Husband of inappropriate marital conduct. Husband answered the complaint in August 2015 and contemporaneously filed his own petition for divorce. Whereas Husband agreed that the parties were experiencing irreconcilable differences in the marriage, he denied that he was guilty of inappropriate marital conduct. According to Husband, Wife was the one guilty of inappropriate marital conduct. Wife promptly denied this allegation when she filed her answer to Husband's counter-petition in September 2015, but, upon Husband's filing of an amended counter-petition for divorce, she later admitted to having committed adultery. Wife argued, however, that the adultery was not the cause of the marriage's demise and specifically asserted that it had taken place only after she and the children had moved out of the marital residence.

The trial of this matter occurred over multiple dates between June 2017 and January 2018. The proof was quite extensive and covered several topics, including the parties' financial details, the children's schooling arrangements, and the children's participation in extracurricular activities. On August 29, 2018, the trial court entered its "Memorandum and Order," granting Husband a divorce on the grounds of Wife's inappropriate marital conduct and adultery. The "Memorandum and Order" was very detailed and made a number of rulings incident to the divorce. In addition to dividing the parties' assets, the trial court's order denied Wife's request for alimony and attorney's fees and granted Husband sole decision-making authority regarding the children's extracurricular activities. In a subsequently-entered permanent parenting plan, Husband was charged with responsibility for payment of the children's tuition, uniforms, and books associated with private schooling, whereas Wife was charged with responsibility for tutoring and required school fees. Wife now appeals to this Court, raising several grievances.

## ISSUES PRESENTED

Wife's appellate brief sets out a number of issues for this Court's consideration. In addition to raising a number of discrete concerns with respect to the trial court's classification, valuation, and division of the marital estate, Wife's brief presents the following issues:

- Whether the trial court erred in failing to award Wife alimony.
- Whether the trial court erred in awarding Husband sole decision-making authority regarding extracurricular activities.
- Whether the trial court erred in requiring Wife to be responsible for private school fees and tutoring costs.
- Whether the trial court erred in failing to award Wife attorney's fees.
- Whether Wife should be awarded appellate attorney's fees.

In Husband's brief, he asks for an award of attorney's fees and costs on appeal.

## STANDARD OF REVIEW

This appeal follows a bench trial. Pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure, "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law de novo, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## DISCUSSION

We turn first to Wife's various concerns pertaining to the trial court's property classification and the division of the marital estate. Initially, this requires us to entertain her raised issue connected to the trial court's conclusion that Husband had $611,000.00 as separate property between a 401(k) and an additional retirement account. The classification of property as marital or separate is a significant part of divorce proceedings because "property cannot be included in the marital estate unless it meets the definition of 'marital property' contained within the Tennessee Code." *Bewick v. Bewick*, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *7 (Tenn. Ct. App. Feb. 13, 2017).

The proof at trial showed that at the time of the marriage Husband had a 401(k) with a premarital value of $611,000.00. Without a doubt, this was his separate property at the time of the marriage. The proof showed that the 401(k)'s value decreased in the early years of the marriage due to market forces, and testimony demonstrated that a number of loans were taken against the 401(k) throughout the marriage to pay marital bills. Further, the evidence demonstrated that Husband continued to make contributions to the 401(k) throughout the marriage and that his employer made contributions to it as well.

Although the 401(k) was Husband's separate property at the time of the marriage, it is clear to us that, pursuant to the governing state statute, the account eventually was comprised of a marital portion in light of the contributions made to it during the marriage. In this regard, we note that Tennessee Code Annotated section 36-4-121(b)(1)(B)(ii) provides as follows: "'Marital property' includes the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefit rights accrued as a result of employment during the marriage." Tenn. Code Ann. § 36-4-121(b)(1)(B)(ii).

Previously, it was the law that *any* gain to such a 401(k) account that accrued during the marriage would be deemed marital property. *See Snodgrass v. Snodgrass*, 295 S.W.3d 240, 255 (Tenn. 2009) ("[N]et gains from any source accruing in such accounts during a marriage are *all* marital property."); *Curry v. Curry*, No. M2007-02446-COA-R3-CV, 2008 WL 4426895, at *10 (Tenn. Ct. App. Sept. 18, 2008) ("[A]ny amount contributed during the marriage, and any increase in the value of the 401(k) that accrued during the marriage[,] is marital property."). Now, however, courts are directed by statute to identify gains in a 401(k) attributable to premarital separate property and those gains attributable to contributions made during the marriage. Indeed, Tennessee Code Annotated section 36-4-121(b)(1)(B)(iii) states as follows:

> The account balance, accrued benefit, or other value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefits accrued as a result of employment prior to the marriage, together with the appreciation of the value, shall be "separate property." In determining appreciation for purposes of this subdivision (b)(1)(B)(iii), the court shall utilize any reasonable method of accounting to attribute postmarital appreciation to the value of the premarital benefits, even though contributions have been made to the account or accounts during the marriage, and even though the contributions have appreciated in value during the marriage; provided, however, the contributions made during the marriage, if made as a result of employment during the marriage and the appreciation attributable to these contributions, would be "marital property." When determining appreciation pursuant to this subdivision (b)(1)(B)(iii), the concepts of commingling and transmutation shall not apply[.]

Tenn. Code Ann. § 36-4-121(b)(1)(B)(iii).

Based on the above, it is clear that as contributions were made to the 401(k) during the marriage, the account was part marital and part separate. As is relevant to our discussion here, however, we note than a significant withdrawal was made by Husband from the 401(k) in 2013, most of which was transferred by Husband to open an individual retirement account ("IRA"). Specifically, over $454,000.00 was withdrawn, of which

approximately $421,000.00 was used to open the new IRA account. Although only Husband's name was placed on this new account, Husband testified that he was only allowed to list one name on the account by law. He testified, however, there was "[n]o other reason" he had not added Wife's name to the new account, and that he did not intend the account to be his separate property, but rather that it was his intent for the account to be marital property and used for the benefit of both parties. The proof further showed that marital funds were placed into this new account during the marriage and that certain withdrawals were made from the account for marital expenses.

The trial court found that, at the time of trial, the 401(k) had a value of $501,788.80, whereas the IRA account funded by the 2013 withdrawal had a value of $422,065.53. The court ruled that Husband's separate property between the two accounts was $611,000.00. Based on Husband's testimony, however, that he intended the IRA account to be marital property, we are of the opinion that the evidence preponderates against the trial court's finding and conclude that the value of the IRA account should be deemed marital property. As for the 401(k), it appears that the 2013 withdrawal would have exhausted the marital portion of that account. *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(iv) ("Any withdrawals from assets described in subdivision (b)(1)(B)(iii) used to acquire marital assets shall be deemed to have come from the marital portion of the account, up to the total of the marital portion."). To this end, we certainly agree with Husband that a portion of his initial separate property from the 401(k) was therefore necessarily "part of" the funding of the IRA account.[1] The remainder of the 401(k) account in the immediate wake of the 2013 withdrawal may have been the separate property of Husband, but the proof showed that the 401(k) was funded throughout the marriage with marital funds. Thus, it would appear that the 401(k) account thereafter became comprised of a marital as well as a separate component, as it did when contributions were made to the premarital portion in the early stages of the marriage. Indeed, any contributions made to the 401(k) after the 2013 withdrawal, and any appreciation attributable to these contributions, would be marital property. Having concluded that Husband's IRA account is marital property, we hereby reverse that portion of the court's ruling awarding Husband $611,000.00 in separate property from the retirement accounts and remand this issue to the trial court for further review in light of the instruction in Tennessee Code Annotated section 36-4-121(b)(1)(B)(iii). The trial court, in its discretion, is free to take additional proof, including expert proof, to resolve this issue.

In light of the unresolved issue pertaining to the 401(k) and our conclusion that the IRA account funded from the 401(k) is marital property, we must also vacate the trial court's division of marital property, as well as its ruling on alimony and attorney's fees.

---

[1] Of course, in light of Husband's testimony that he intended the new account to be marital property, we are of the opinion that the IRA account itself should be classified as such.

- 5 -

As we explained in a prior opinion, the dissolution of a marriage requires courts to engage in an "orderly disentanglement" of the parties' affairs:

> As a general rule, the first issue considered in a divorce case concerns whether either or both parties have demonstrated that they are entitled to a divorce. Thus, at the outset, trial courts should first determine to whom the divorce should be awarded or whether the parties should be declared divorced in accordance with Tenn. Code Ann. § 36–4–129 (1996). Following this decision, trial courts should turn their attention to the custody and visitation arrangements for the children if the parties have minor children entitled to support. Only after these status issues have been decided should trial courts turn their attention to the financial aspects of the divorce decree.

> The trial court's first task following the resolution of the status issues is to identify and distribute the parties' separate property and then to divide their marital property in an equitable manner. *See Batson v. Batson,* 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). As part of this process, the trial court should also identify and allocate the parties' separate and marital debts. *See Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996); *Hanover v. Hanover,* 775 S.W.2d 612, 614 (Tenn. Ct. App. 1989). Sorting out the parties' property interests must precede support decisions because the manner in which the separate and marital property is divided can affect later support decisions. *See* Tenn. Code Ann. § 36–5–101(d)(1)(G), –101(d)(1)(H) (Supp.1997); Tenn. Comp. R. & Regs. r. 1240–2–4–.03(2) (1994); *Ridley v. Ridley,* No. 01A01–9012–CV–00462, at *5 (Tenn. Ct. App. May 10, 1991) (Koch, J., concurring) (No Tenn. R. App. P. 11 application filed).

> . . . .

> Once a court has determined whether spousal support should be awarded, and if so its nature, amount, and duration, it should, as a final matter, address any request for attorney's fees if such request has been made. Considering requests for attorney's fees in the context of the spousal support award is appropriate because additional awards for attorney's fees are considered a form of support. *See Ford v. Ford,* 952 S.W.2d 824, 830 (Tenn. Ct. App. 1996); *Smith v. Smith,* 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995). However, as pointed out by the Tennessee Supreme Court, requests for attorney's fees should be considered only after the court has resolved the issues concerning the parties' property and support. *See Inman v. Inman,* 811 S.W.2d 870, 874 (Tenn.1991).

*Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998) (internal footnote omitted); s*ee also Trezevant v. Trezevant*, 568 S.W.3d 595, 624 (Tenn. Ct. App. 2018) (vacating awards of alimony and attorney's fees in light of need to re-evaluate the marital estate); *Kirby v. Kirby*, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at *9 (Tenn. Ct. App. July 25, 2016) (directing court to reconsider alimony award in light of vacation of the court's marital property distribution).

Although we must vacate the trial court's division of the marital estate and its ruling on alimony and attorney's fees, additional comments and instruction are nonetheless warranted as to these matters. As for the trial court's division of marital property, we note, as Wife has, that the trial court failed to assign the parties' Nissan Rogue to either party. This vehicle should be assigned on remand incident to the division of the marital estate.

Concerning the division of the estate more generally, we observe that Wife challenged the current division of marital property on the ground that Husband allegedly received a disproportionately greater share. Although an equal division of marital property is not required, an equitable one is. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) ("A division of marital property is not rendered inequitable simply because it is not precisely equal."). Specifically, a trial court is directed to consider the factors in Tennessee Code Annotated section 36-4-121(c), which are as follows:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

Although the trial court did consider these factors, we are of the opinion that some of the court's specific considerations were misplaced and appear to have greatly influenced the overall property division. Namely, we are concerned with the trial court's direct highlighting of evidence that Wife's family businesses earn over $18.7 million annually. The trial court referenced this fact on two occasions incident to its division of the marital estate, nominally in regard to Tennessee Code Annotated section 36-4-121(c)(2) and Tennessee Code Annotated section 36-4-121(c)(4). The trial court also specifically referenced the fact that Wife was being groomed to become CFO of these businesses, and according to the court, would "very soon" have the same earning capacity as Husband. Initially, we note that the progression of Wife in the family businesses was somewhat speculative, with her father testifying that "[t]ime will tell" and that some of these changes were perhaps five or six years away. This aside, the reference to the annual earnings of the family businesses is troubling because there is no evidence that Wife had any equity interest and would therefore share in any profit proceeds. The proof at trial revealed that the only two stockholders were Wife's mother and father. Thus, we are of the opinion that it was error for the trial court to place emphasis on the annual earnings of these businesses in relation to the consideration of Wife's financial needs.

Similar concerns attach to the trial court's analysis on Wife's claim for alimony, which also included references to Wife's future at her family's businesses and the annual earnings of these businesses. As already noted, Wife's future at the businesses was speculative, and we observe that in a prior decision, we recently concluded that a trial court erred in considering "speculative income" incident to a ruling on alimony. *See Diffie v. Diffie*, No. M2018-00267-COA-R3-CV, 2019 WL 1785683, at *13 (Tenn. Ct. App. Apr. 23, 2019). As for the trial court's reference to the annual earnings of Wife's

family businesses, we once again note that Wife has no ownership interest in these companies. Therefore, we find it to be error to place emphasis on these annual earnings in relation to Wife's financial needs.

Regarding Wife's claim for trial attorney's fees, we observe that the trial court held, among other things, that Husband would be required to deplete his resources in order to pay Wife's fees. We agree with Wife that it is unclear how this would be the case under the current property division, but obviously, the issue of attorney's fees must be reconsidered on remand in light of the court's ruling on the antecedent financial issues.

We note that the trial court also denied attorney's fees to Wife due to what it determined was excessive litigation. We have no qualms with the trial court's refusal to sanction an award for fees that it determined were unnecessarily incurred. Nonetheless, for fees that did not contribute to excessive litigation, the trial court should consider the relevant factors in Tennessee Code Annotated section 36-5-121(i). *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (noting that an award of attorney's fees in a divorce case constitutes alimony in solido and that, as with any alimony award, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i)).

To briefly recap our analysis thus far, we have determined that the account initially funded by the 2013 withdrawal from the 401(k) should be deemed marital property. On remand, the trial court should determine which portion of the existing 401(k) is marital property in light of Tennessee Code Annotated section 36-4-121(b)(1)(B)(iii) and, upon doing so, equitably divide all of the marital estate. The division of the marital estate should include an assignment of the value of the Rogue vehicle to one of the parties, and the trial court should remain mindful of the fact that Wife does not have an equity ownership in her family's businesses. Upon an equitable division of the estate, the trial court should, consistent with our discussion herein, also reconsider the issues of alimony and attorney's fees.

We next turn to Wife's contention that the trial court erred in awarding Husband sole decision-making authority regarding the children's extracurricular activities. "Residential schedule and parenting responsibility decisions are peculiarly within the broad discretion of the trial judge; accordingly, we review these decisions under an abuse of discretion standard." *Christie v. Christie*, No. M2012-02622-COA-R3-CV, 2014 WL 4293966, at *2 (Tenn. Ct. App. Aug. 28, 2014). When allocating decision-making authority, courts shall consider the following factors:

(1) The existence of a limitation under § 36-6-406;
(2) The history of participation of each parent in decision making in each of the following areas: physical care, emotional stability, intellectual and

moral development, health, education, extracurricular activities, and religion; and whether each parent attended a court-ordered parent education seminar;

(3) Whether the parents have demonstrated the ability and desire to cooperate with one another in decision making regarding the child in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and

(4) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

Tenn. Code Ann. § 36-6-407(c).

In this case, the court explained its decision to award Husband sole decision-making authority over extracurricular activities as follows:

In their Proposed Permanent Parenting Plans, the parties both suggest that there should be joint decision-making regarding the children's extracurricular activities.[2] The Court disagrees and finds that it would not be in the best interest of the children for these parents to share that responsibility. There have been numerous disputes about the children's extracurricular activities. Allowing the parties joint decision-making regarding extracurricular activities would not "minimize the children's exposure to harmful potential conduct."

At trial, the evidence indicated that Father is more involved in these activities – he coaches many of the teams – and he is more excited about the children's participation in these activities. Father went into great detail about each child's extracurricular activities and how participation in those activities helps each individual child to grow. Mother did not. Her testimony about the children's extracurricular activities was either complaining about them or how they affected her – making money from the soccer tournaments. Accordingly, the Court finds that Father shall be the sole decision maker about the children's extracurricular activities. This is in the best interest of the children.

(internal citation omitted).

---

[2] It is noteworthy that neither party maintains such a position on appeal, which is indicative of the fact that joint decision-making in this area would not be a cooperative practice.

- 10 -

In light of the trial court's findings about the parties' conflict over extracurricular activities and Husband's history of heavy involvement in them, we conclude that the trial court did not err in giving Husband sole decision-making authority in this area. There was no abuse of discretion on its part.

We next turn our attention to the trial court's allocation of private school expenses. Whereas Wife asserts that the trial court erred in ordering her to be responsible for the children's tutoring and required school fees, Husband submits that the court's allocation of private school expenses was proper.

The Child Support Guidelines allow for the imposition of extraordinary expenses, including educational expenses, in addition to an award of support. *Schwager v. Messer*, No. W2018-01820-COA-R3-CV, 2019 WL 4733475, at *11 (Tenn. Ct. App. Sept. 27, 2019). Indeed, the Guidelines instruct that:

> (i) Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary educational expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.
>
> (ii) In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.
>
> (iii) If a deviation is allowed for extraordinary educational expenses, a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the Worksheet in the deviation section.

Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)(1).

As this Court has previously explained:

> "[T]he guidelines contemplate private school tuition to be an 'extraordinary educational expense' because the tuition exceeds or departs from the cost of public schooling." *Barnett v. Barnett,* 27 S.W.3d 904, 907 (Tenn. 2000). "[P]ayment of extraordinary educational expenses is a separate component of an obligor's [BCSO]" and a trial court "can order the obligor to pay less than the full amount of a child's (or children's) extraordinary educational expenses, depending upon the proof in a particular case." *Kaplan v. Bugalla,* 188 S.W.3d 632, 636 (Tenn.

2006); *Richardson v. Spanos,* 189 S.W.3d 720, 728-29 (Tenn. Ct. App. 2005) (holding that "this court has consistently approved arrangements requiring the non-custodial parent to pay only a portion of the private school expenses even when the non-custodial parent's income far exceeds that of the primary residential parent").

> The child support provisions under the old guidelines stated that "'[e]xtraordinary educational expenses . . . *shall* be added to the percentage calculated in the above rule [setting out the percentage of net income to be paid as child support].' " *Kaplan,* 188 S.W.3d at 635 (citing *Barnett,* 27 S.W.3d at 907). However, "[i]n 2005 the child support guidelines were revised to provide that additional support for extraordinary educational expenses should be calculated separately and 'may' be added to the basic support award." *Id.* at 638 n. 9. As stated earlier, the use of the word "may" connotes discretion on the part of the trial court, unless the context of the statute indicates otherwise. *Williams,* 352 S.W.2d at 433. The change in wording under the Guidelines from "shall" to "may" is a clear indication that the imposition of the extraordinary expense of private school tuition is now a discretionary decision.

*Johnson v. Johnson*, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *10 (Tenn. Ct. App. Apr. 2, 2009).

Upon a cursory glance, the trial court's allocation of private school expenses seems reasonable. Among other things, Husband is responsible for tuition, which he has not contested, and Wife is responsible for tutoring and required school fees. Unfortunately, based on the record before us, we are unable to sufficiently determine whether the trial court abused its discretion in its allocation of expenses associated with private schooling. Although proof was presented regarding the cost of tuition, the record does not appear to shed any light on the costs of the fees and expenses with which Wife was charged the responsibility of paying. As Wife argues in her brief on appeal, "[t]he trial court failed to make any findings of fact or conclusions of law as to this issue including any analysis of the cost." In the absence of evidence as to the costs of tutoring and school fees associated with the children's private schooling, we are unable to review the merits of the trial court's action. As such, we vacate the trial court's allocation of private school tutoring costs and school fees, all of which were charged to Wife, and remand for further findings and consideration. The trial court is free to consider additional proof on this issue, including in regard to the costs of the associated private school expenses and the parties' relative ability to pay for them.

Lastly, we turn to the question of appellate attorney's fees. Both parties have requested an award of attorney's fees in their briefs to this Court. Respectfully, in the exercise of our discretion, we decline to award attorney's fees to either party.

- 12 -

**CONCLUSION**

In light of the foregoing discussion, the judgment of the trial court is affirmed in part, reversed in part, vacated in part, and remanded for such further proceedings as are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE